Don **BOYSTER** and James
Shoffner, Appellants,

v.

O. R. **RODEN**, Michael Hare and Phillip
Lassiter, Appellees.

No. 79–1855.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1980.

Decided Sept. 2, 1980.

Robert Banks, Jr., Memphis, Tenn., for appellants; Collins Kilgore, Jr., Little Rock, Ark., on brief.

Timothy Fagan Watson, Pickens, Boyce, McLarty & Watson, Newport, Ark. (argued), and Fred M. Pickens, Jr., Newport, Ark., on brief, for appellees.

Before STEPHENSON and McMILLIAN, Circuit Judges, and VIETOR,* District Judge.

VIETOR, District Judge.

This is an appeal from an order of the United States District Court for the Eastern District of Arkansas [1] dismissing appellants' complaint for lack of subject matter jurisdiction.

Appellants Don Boyster and James Shoffner filed a complaint seeking damages against appellees O. R. Roden, Michael Hare and Phillip Lassiter for alleged violation of fiduciary duties under the laws of the United States and under the laws of the state of Arkansas. The complaint alleges in essence that Rodin, in his capacity as vice chairman of the board of directors of the White River Production Credit Association (WRPCA), a production credit association organized and existing under the laws of the United States, learned in confidence the details of a proposed sale and purchase of some farm land in respect to which Boyster and Shoffner were seeking a purchase loan from WRPCA, and then conveyed this confidential information to Hare and Lassiter, who then, pursuant to an agreement with Rodin, submitted a higher bid for the farm land and purchased it.

Appellants' sole federal jurisdictional allegation is that the matter in controversy arises under the *common law* of the United States.[2] There is no contention by appellants that the matter in controversy arises under any federal constitutional provision, statute, administrative regulation or treaty. Thus, the only question on appeal is whether the matter in controversy arises under federal common law.

Jurisdiction under 28 U.S.C. § 1331(a) may rest on federal common law. *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). Appellants concede that there is no federal case recognizing the existence of federal common law governing fiduciaries in any context whatsoever, but they contend that this court should now declare that federal common law governs fiduciaries of federally chartered production credit associations. We decline to do so and we affirm the district court's order of dismissal.

The Farm Credit Act of 1971, 12 U.S.C. § 2071, et seq., P.L. 92–181, a complete legislative rewriting of the farm credit laws and the statutory basis for the farm credit system, was passed by the 92d Congress, First Session. According to the House Report on the bill, H.R.Rep.92–593, 92d Cong., 1st Sess., the "Federal Farm Credit System will, under [the Act], continue to bring much needed credit to a growing and changing agriculture." 1971 U.S.Code

---

* The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable Elsijane Trimble Roy, United States District Judge for the Eastern District of Arkansas.

2. 28 U.S.C. § 1331(a) provides in pertinent part: "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States * * *."

Cong. & Admin.News, p. 2091. *See also Daley v. Farm Credit Administration*, 454 F.Supp. 953, 954 (D.Minn.1978) ("The objective of the Farm Credit System is to satisfy the peculiar credit needs of American farmers and ranchers while encouraging those farmers and ranchers to participate through management, control, and ownership of the system.").

12 U.S.C. § 2091 provides for the organization of production credit associations by "ten or more farmers or ranchers or producers or harvesters of aquatic products desiring to borrow money under the provisions" of Title II of the Farm Credit Act of 1971, 12 U.S.C. § 2001, et seq. The proposed articles of association must be forwarded to the federal intermediate credit bank for the district. Provision for the establishment of federal intermediate credit banks is made in 12 U.S.C. § 2071, and they are in turn subject to the supervision of the Farm Credit Administration. 12 U.S.C. § 2071. Upon approval of the proposed articles by the Governor of the Farm Credit Administration, "the association shall become as of such date a federally chartered body corporate and an instrumentality of the United States." 12 U.S.C. § 2091. Section 2091 also provides that "[e]ach production credit association chartered under Section 20 of the Farm Credit Act of 1933, as amended, shall continue as a federally chartered instrumentality of the United States." 12 U.S.C. § 2098, which exempts notes, debentures and other obligations issued by production credit associations from most forms of taxation, recites that "[e]ach production credit association and its obligations are instrumentalities of the United States * * *."

Appellants advance the view that the fiduciary obligations of production credit association officers and directors should be governed by federal common law rather than the laws of the states in order to effectuate the Farm Credit System's purpose of satisfying the credit needs of farmers and ranchers. They contend that there is an overriding federal interest in having credit available to farmers and ranchers, and that this interest requires that the farmers and ranchers trust the officers and directors of the production credit associations. In support of this view, appellants point to the statutes discussed *supra*, especially the statutory declarations that a production credit association is an "instrumentality of the United States," and to the following regulations:

The maintenance of high standards of industry, honesty, integrity, impartiality, and conduct by directors, officers, and employees of all institutions and organizations in the Farm Credit System is essential to insure the proper performance of System business and continued public confidence in the System and all its entities. The avoidance of misconduct and conflicts of interest, either real or apparent, by all personnel is indispensable to the maintenance of these standards. All personnel shall observe both the letter and the intent of the laws, regulations, instructions, and procedures applicable to them and to entities in the System, whether issued by the Farm Credit Administration or by the entities themselves.

12 C.F.R. § 612.2110.

A salaried officer, employee, or agent of any institution of the Farm Credit System:

\* \* \* \* \* \*

(b) Shall not use for his own personal benefit or that of another or, except in the performance of his official duties, divulge to another person any fact or information acquired, directly or indirectly, by virtue of his employment which is not generally available to the public; * *.

12 C.F.R. § 612.2160.[3]

There is a substantial federal interest in having credit available to farmers and

---

**3.** Appellants cited the regulations, 12 C.F.R. §§ 612.2110 and 612.2160(b), for the first time in oral argument before this court. They cite them for the purpose of supporting their view that the matter in controversy arises under federal common law; they do not contend that

ranchers, and this interest no doubt requires that the farmers and ranchers trust the officers and directors of production credit associations to meet the standards enumerated in 12 C.F.R. § 612.2110 and not to violate the prohibitions of 12 C.F.R. § 612.2160. Also, there is a "pervasive involvement of the federal government in the creation and operation of the production credit associations." *Schlake v. Beatrice Production Credit Ass'n,* 596 F.2d 278, 281 (8th Cir. 1979). These truths, however, do not necessarily establish that the federal interest is of such a nature as to require that the fiduciary responsibilities of production credit association officers and directors be governed by a body of federal common law rather than state law.

Appellants rely primarily on the following cases: *Illinois v. City of Milwaukee, supra* (federal common law to be applied to abate nuisance of interstate water pollution); *Banco Nacional De Cuba v. Sabbatino,* 376 U.S. 398, 425, 84 S.Ct. 923, 938, 11 L.Ed.2d 804 (1964) (the scope of the act of state doctrine is to be governed by federal, rather than state, law, the Court noting: "[W]e are constrained to make it clear that an issue concerned with a basic choice regarding the competence and function of the Judiciary and the National Executive in ordering our relationships with other members of the international community must be treated exclusively as an aspect of federal law."); *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) (a case heavily relied on by appellants in which the Court applied federal common law because the rights and duties of the United States on commercial paper which it issues were involved, noting that the application of state law would subject the rights and duties of the United States to exceptional uncertainty and diversity in

the matter in controversy arises under administrative regulations of the United States, *see Farmer v. Philadelphia Electric Co.,* 329 F.2d 3 (3d Cir. 1964), nor could we consider such a proposition because it was not presented to the district court. *Miree v. DeKalb County,* 433 U.S. 25, 33–34, 97 S.Ct. 2490, 2495–96, 53 L.Ed.2d 557 (1977).

results); *D'Oench, Duhme & Co. v. Federal Deposit Ins. Co.,* 315 U.S. 447, 457, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (federal common law applied because the Federal Reserve Act revealed "a federal policy to protect respondent, and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which respondent insures or to which it makes loans."); *Evansville v. Kentucky Liquid Recycling, Inc.,* 604 F.2d 1008 (7th Cir. 1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980) (federal common law applied to damage claims arising from contamination of interstate waters); *Ivy Broadcasting Co. v. American Tel. & Tel. Co.,* 391 F.2d 486 (2d Cir. 1968) (federal common law applied to claims for negligence and breach of contract in providing interstate telephone service by a communications common carrier that was subject to the Communications Act of 1934).[4]

The overriding federal interest requiring application of federal common law in the cited cases is clear, but those decisions do not persuade us that there is a need to override state law with federal common law in respect to the obligations a production credit association fiduciary owes to a loan applicant. In *Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966), the Court set forth the nature of the federal interest required to apply federal common law:

> In deciding whether rules of federal common law should be fashioned, normally the guiding principle is that a significant conflict between some federal policy or interest and the use of state law in the premises must first be specifically shown. It is by no means enough that, as we may assume, Congress could under the Consti-

4. *Illinois v. City of Milwaukee, Evansville v. Kentucky Liquid Recycling, Inc.,* and *Ivy Broadcasting Co. v. American Tel. & Tel. Co.* are the only cited cases in which federal jurisdiction rested on the matter in controversy arising under federal common law. The other cases had different jurisdictional grounds, but are cited for their application of federal common law to the controversies.

tution readily enact a complete code of law governing transactions in federal mineral leases among private parties. Whether latent federal power should be exercised to displace state law is primarily a decision for Congress. Even where there is related federal legislation in an area, as is true in this instance, it must be remembered that "Congress acts . . against the background of the total *corpus juris* of the states. . . ." Hart & Wechsler, The Federal Courts and the Federal System 435 (1953).

The quoted *Wallis* language was relied on in *Miree v. DeKalb County*, 433 U.S. 25, 31–32, 97 S.Ct. 2490, 2494–95, 53 L.Ed.2d 557 (1977), in which the Court held that state law, not federal common law, must be applied to suits arising out of an airplane takeoff crash at the county's airport. The complaints asserted a third party beneficiary breach of contract theory. Six "grant" agreements between the county and the Federal Aviation Administration required the county to restrict use of land adjacent to the airport to purposes compatible with takeoff of aircraft. The complaints alleged that the county's breach of this term of the agreements caused the crash. The Court disagreed with the court of appeals' conclusion that uniformity of decision demanded that federal common law control the contracts' interpretation. *Id.* at 28, 97 S.Ct. at 2493. The Court observed that the litigation raised "no question regarding the liability of the United States or the responsibilities of the United States under the contracts," *id.* at 28–29, 97 S.Ct. at 2493; that application of federal common law "would promote no federal interests even approaching the magnitude of those found in *Clearfield Trust*," *id.* at 29, 97 S.Ct. at 2493; that resolution of the litigation "will have no direct effect upon the United States or its Treasury," *id.* at 29, 97 S.Ct. at 2494; that the operations of the United States in connection with Federal Aviation Administration grants, which the Court characterized as being of "considera-

ble magnitude," would not "be burdened or subjected to uncertainty by variant state–law interpretations," *id.* at 30, 97 S.Ct. at 2494; and that "[s]ince only the rights of private litigants are at issue here, we find the *Clearfield Trust* rationale inapplicable." *Id.* at 30, 97 S.Ct. at 2494. The Court further observed: "Nor is the fact that the United States has a substantial interest in regulating aircraft travel and promoting air travel safety sufficient * * * to call into play the rule of *Clearfield Trust*." *Id.* at 31, 97 S.Ct. at 2495. In conclusion the Court stated: "We conclude that any federal interest in the outcome of the question before us 'is far too speculative, far too remote a possibility to justify the application of federal law to transactions essentially of local concern.' [*Bank of America Nat. Trust & Sav. Ass'n v. Parnell*, 352 U.S. 29, 33–34, 77 S.Ct. 119, 121, 1 L.Ed.2d 93 (1956)]." *Id.* at 32–33, 97 S.Ct. at 2495.

We are not persuaded that the substantial federal interest in successful operation of the Farm Credit System will be impaired by application of state law to appellants' claims. Even if the fiduciary law varies somewhat from state to state, no burden to the System is perceived; each production credit association is a separate entity with a local situs, and its business transactions are with farmers and ranchers in its locale. Appellants have failed to specifically show any significant conflict between some federal policy or interest and the use of state law, nor have they shown that state law is inadequate to protect their rights.[5] There is no reason to override state law in this suit between private litigants.

The matter in controversy does not arise under federal common law and therefore the district court was without subject matter jurisdiction.

The order of the district court dismissing appellants' complaint is affirmed.

Affirmed.

---

5. The regulations, 12 C.F.R. §§ 612.2110 and 612.2160(b), the pertinent provisions of which are set forth in the text of this opinion, could probably be used by appellants as evidence in a trial of their claim under state law.