Glen E. **HARTMAN** and Priscilla M. Hartman, Plaintiffs,

v.

**FARMERS PRODUCTION CREDIT ASSOCIATION OF SCOTTSBURG**, Robert Fawver, David Morris, the Board of Directors of Farmers Production Credit Association, Roy Schenck, John E. Gillaspy, Donald Green, Lester Burbrink, Roger Clark and Kendall Bonsett, Defendants.

No. NA 81–163–C.

United States District Court, S.D. Indiana, New Albany Division.

March 18, 1983.

Mark A. Center, Bamberger & Feibleman, Indianapolis, Ind., for plaintiffs.

Daniel E. Johnson, James H. Hamm, III, Baker & Daniels, Indianapolis, Ind., for defendants.

### ENTRY

NOLAND, Chief Judge.

This matter is before the Court on the defendants' motion to dismiss pursuant to Rules 12(b)(1) and (6), Fed.R.Civ.P. with attached brief in support thereof, the plaintiffs' brief in opposition and the defendants' reply brief. The issues have been carefully and fully briefed and are ready for disposition.

The Court, being duly advised on the premises, now finds that Count IV of the complaint fails to state a claim upon which relief can be granted as no private right exists for alleged violations of Title 12 U.S.C. § 2001 *et seq.* and the regulations promulgated thereunder being the Farm Credit Act. Further that there is no diversity of citizenship between the parties and the Court has no subject matter jurisdiction over the pendant claims in Counts I, II and III of the complaint.

Accordingly, the Court now DISMISSES the complaint without prejudice as to all counts and defendants.

## MEMORANDUM

The action before the Court is against Scottsburg Production Credit Association and certain of its representatives, officers and board of directors (hereinafter called "PCA") on four counts: 1) breach of agreement and implied warrant of habitability, 2) fraud in inception of a contract, 3) reliance to plaintiff's detriment on the PCA's misrepresentation, made knowingly of their falsity, and 4) violation of the Farm Credit Act and the regulations promulgated under it. They seek actual and punitive damages, recision of the contract, and repayment of loan payments already made.

The plaintiffs, Glen Hartman and his wife, are farmers who borrowed money from the Scottsburg Production Credit Association, a federally chartered instrumentality under the Farm Credit Act, in order to buy a farm then owned by the PCA. An initial agreement provided for a Seven Hundred Thousand Dollar ($700,000.00) loan payable in twenty (20) years, and a five-year guaranteed line of credit for operation expenses. At the time of closing, however, the contract called for repayment in only ten (10) years. The line of credit was subsequently denied. Not only does the plaintiff claim breach of contract, but that the defendants violated the terms of 12 C.F.R. § 614.4110, providing that a production credit association shall not make loans for longer than seven (7) years.

Second, the Hartmans allege that the defendants knowingly and maliciously misrepresented facts about the farm in order to induce them to buy it, and in fact, they did rely, to their detriment, on those misrepresentations. The plaintiff further asserts in support of Count I, that contrary to the defendants' representations, water on the farm was unsuitable for livestock or human consumption; a breach of implied warranty of habitability.

Plaintiffs further assert that 12 C.F.R. § 601.100 provides that all of a PCA's officers and employees shall observe the highest standards of conduct in the discharge of their duties and shall conduct themselves at all times in the highest manner.

By knowingly misrepresenting facts about the farm, the Hartmans claim that the defendants violated this regulation.

Ultimately, the Hartmans defaulted on the note. They contend that according to 12 U.S.C. § 2096(b) and 12 C.F.R. § 614.-4140, the PCA, in granting a loan, is supposed to consider the borrower's ability to repay the loan. It is alleged that not only did the PCA fail to consider this, but they altered the plaintiff's cash flow projections in order to secure the loan for him. Thus, again violating the duties imposed on officers and employees of a PCA by 12 C.F.R. § 601.100 and § 601.110(g) which prohibits engaging in any infamous, dishonest, immoral, or notoriously disgraceful conduct.

On the basis of these facts, the Hartmans allege violation of the Farm Credit Act and its regulations in that the PCA was without power to lend money for maturities exceeding seven years, the property was not capable of servicing the debt, and the conduct breached the defendants' fiduciary duties.

The plaintiff concedes that the first three counts of his complaint are all matters of state law over which this Court does not have subject matter jurisdiction unless they are pendant to the fourth count, violation of the Farm Credit Act and its regulations. (Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, p. 7) Therefore, the issue confronting the Court is whether violation of the Farm Credit Act, 12 U.S.C. § 2001, *et seq.*, and the regulations promulgated under it gives the Hartmans a private cause of action. As long as the question is not frivolous, the Court has jurisdiction under 28 U.S.C. § 1331 to decide this issue. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

█ The mere violation of a federal statute does not automatically give rise to a private cause of action. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979), *on remand,* 612 F.2d 68 (2nd Cir.1979); *Cannon v. Univ. of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979).

A private remedy must be found in the language of the statute, either expressly or implicitly.

■ There are no words in the Farm Credit Act that directly confer a private remedy for violation of the Act. Therefore, the Court must determine if there is an implied remedy in the statute. The Hartmans assert that regulations that impose fiduciary duties and govern loan policies read together with the statute, imply a private cause of action. The language of the statute, however, must control. Regulations cannot provide the source of an implied remedy for damages. *Touche Ross & Co. v. Redington, supra,* 442 U.S. at n. 18, 577, 99 S.Ct. at n. 18, 2489.

In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the United States Supreme Court laid out four factors to consider in determining whether a statute impliedly confers a private right of action. These factors are:

1. Is the plaintiff one of the class for whose especial benefit the statute was enacted?

2. Is there any legislative intent—explicit or implicit—to create a remedy?

3. Is a remedy consistent with the underlying purposes of the legislative scheme?

4. Is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2088.

### I.

■ First, do the Hartmans fall within the class the statute was enacted to benefit? That is, does the statute create a federal right in favor of the plaintiff? A federal right has usually been found where an Act regulates the relationship between a plaintiff class and a defendant class, by imposing certain duties on the defendant class or proscribing certain conduct that Congress has found abusive. *See, California v. Sierra Club,* 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). The Farm Credit Act does not establish such a pervasive legislative scheme to control such a relationship. It neither imposes duties on production credit association nor does it proscribe any conduct. It merely creates the instrumentalities by which the American farmer may obtain needed credit. The purpose of the Act is to improve "the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit." 12 U.S.C. § 2001(a). It is to satisfy their credit needs while encouraging farmers and ranchers to participate on the management and ownership of the system. *Daley v. Farm Credit Administration,* 454 F.Supp. 953, 954 (D.Minn.1978). Thus, the statute does not create any private federal remedy.

■ Interpreting the word "benefit", however, in a light most favorable to the plaintiff, it is arguable that the Farm Credit Act was established to "help" farmers, and, therefore, the Hartmans do fall with the class the Act was enacted to benefit. The fact that an enactment is designed to benefit a particular class does not, alone, establish an intent that the statute be enforced through private litigation. *Universities Research Assn., Inc. v. Coutu,* 450 U.S. 754, 771, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981).

### II.

■ The key factor is whether Congress intended to create a remedy. *See, Universities Research Assn., Inc. v. Coutu, supra; Transamerica Mortgage Advisors v. Lewis, supra; Touche Ross & Co. v. Redington, supra.* There is nothing expressly stated in the Act's legislative history to indicate whether Congress wished to create a remedy, or that it even considered the issue. If anything, the implication of cer-

tain sections is that Congress foresaw state corporation laws governing the actions of production credit associations.

First, the plaintiff relies strongly on the fact that a PCA is a federal instrumentality granted power to sue and be sued. 12 U.S.C. § 2093(4). The Hartmans contend that if PCA's can be sued, Congress must have contemplated occasions when an aggrieved farmer would be able to sue, so a federal cause of action must be implied. We decline to accept this contention. Sue and be sued clauses are included in all statutes that establish a federally chartered corporation. They merely waive governmental immunity, thereby imposing the same legal obligations and rights on a federally chartered entity as those of a private corporation. *See, Mullins v. First National Exchange Bank of Virginia,* 275 F.Supp. 712, 717–19 (D.Va.1967). There is no indication that the Congress, in giving a PCA the power to sue or be sued, intended to do anything other than waive governmental immunity.

Second, the plaintiff contends that the Congress' failure to consider a remedy does not mean it did not want to provide one. The Hartmans propose that the Congress failed to provide an express remedy because the nature of the legislation was to facilitate social goals, not proscribe or eliminate certain conduct. Consequently, the Congress may simply have overlooked the need for a private remedy for the benefited class. Even if this were true, it is not the Court's place to legislate or second guess the Congress and provide a remedy where it has failed to do so.

Furthermore, the fact that the Congress provided some procedure (notice, reason for denial and hearing) for borrowers who are denied loans, implies that they did consider problems and remedies arising under the Farm Credit Act. *See,* 12 U.S.C. §§ 2201 and 2202.

Moreover, 12 U.S.C. § 2258 suggests that the Congress contemplated that production credit associations would use the state courts and be governed by state laws in most controversies. Section 2258 pro-vides that each institution of the farm credit system shall, for purposes of jurisdiction, be deemed a citizen of the state in which its principal office is located. In the 1971 Act, this section also included a provision that prohibited federal district court jurisdiction for production credit associations except on certain limited circumstances. Congress very clearly did not intend remedies in federal court. This prohibition was deleted in a 1975 amendment, not because the Congress had reconsidered a federal remedy, but because it presented problems when making certain types of loans. The 1971 Act gave product credit associations the authority to lend to producers of aquatic products. However, since such producers fell under maritime law and the exclusive jurisdiction of the federal courts, production credit associations could not enforce liens on fishing boats without access to the federal courts. To remedy this situation, Congress struck the above position. Striking the provision "will permit persons and other entities to pursue their claims against production credit associations in federal district court, if jurisdictional elements are present...." U.S.Code & Administrative News, p. 2148, 2150, 2154–55.

Finally, the plaintiff argues that the Farm Credit Act was passed prior to *Cort,* at a time when courts frequently implied a cause of action, so Congress probably relied on that fact and saw no reason to expressly provide a remedy. This is not dispositive in light of the fact that since *Cort* the United States Supreme Court has denied an implied cause of action under many statutes passed prior to *Cort. California v. Sierra Club,* 451 U.S. at 299–300, 101 S.Ct. at 1782–83, J. Stevens, concurring.

In summary, the legislative history of the Farm Credit Act does not support the intention on the part of Congress to create a private cause of action for violation of the Act. Indeed, the legislative history surrounding 12 U.S.C. § 2258 strongly suggests that Congress contemplated state law would govern most actions of a production credit association.

### III.

The third consideration is whether a private cause of action is consistent with the underlying purpose of the legislative scheme. As mentioned previously, the purpose of the Farm Credit Act is to provide needed credit to farmers and ranchers. The objective is "to provide the types of credit needed by borrowers, at the lowest reasonable cost on a sound business basis...." 12 U.S.C. § 2096(b). Authority is given to the Farm Credit Association to promulgate rules and regulations to carry out the provisions of the Act. 12 U.S.C. § 2252. There are no broad remedial purposes underlying the statute that would require a private cause of action.

The Hartmans argue that the purpose of sound, adequate credit will be frustrated unless a remedy is implied. A federal remedy, however, is not necessary to protect the Hartmans' rights, for they have an adequate remedy in state court. "Even if the fiduciary law varies from state to state, no burden to the [Farm Credit] system is perceived...." *Boyster v. Roden*, 628 F.2d 1121, 1125 (8th Cir.1980).

The plaintiff also contends that a federal remedy is needed to flesh out the scope and coverage of federal regulations and to provide more uniformity in applying such regulations. Since Congress provided that each entity be considered a citizen of the state in which its principal office is located, and thus subject to that state's laws, it did not contemplate a uniform federal application. *See*, Section IV, *infra*.

### IV.

Finally, the Court must consider whether the cause of action Hartman relies on is one traditionally relegated to state law. If it is, it would be inappropriate to infer a cause of action based solely on federal law. Breach of fiduciary duty, breach of contract, and fraud are all traditional state law matters.

In *Boyster v. Roden, supra*, the plaintiff, a farmer, was seeking damages for alleged violation of a fiduciary duty by a production credit association board of director vice-chairman. The Court of Appeals was asked to decide whether federal common law should govern fiduciaries of federally chartered production credit associations. The plaintiff argued that federal common law should govern, rather than state law, in order to effectuate the Farm Credit Act's purpose. Although the Court agreed that there was a substantial federal interest in having credit available to farmers and that the federal government was pervasively involved in the creation and operation of production credit associations, the Court rejected the contention that federal common law should prevail. It concluded that the guiding principle for applying federal common law, a significant conflict between federal policy or interest and use of state law, was missing. "We are not persuaded that the substantial federal interest in successful operation of the Farm Credit System will be impaired by application of state law ... each production credit association is a separate entity with a local situs, and its business transactions are with farmers and ranchers in its locale." *Id.* at 1125.

The situation in Boyster is analogous to this case. As long as a state remedy is adequate to protect the Hartmans' interests, it would be improper to intrude into this state law area.

### CONCLUSION

The Farm Credit Act does not expressly provide a private cause of action for violation of its provisions, nor can one be implied. The United States Supreme Court has set forth four criteria for determining an implied remedy arising from a federal statute. *Cort v. Ash, supra*. Even assuming the Hartmans fall within the class for whose benefit the Farm Credit Act was enacted, the other three criteria are not met. Congress did not intend to provide a federal remedy, a private cause of action is not necessary to attain the underlying purpose of the Act, and the plaintiff's cause of action is one traditionally relegated to state law. This Court certainly would not condone the conduct alleged here, but the

Hartmans have an adequate remedy in the state court. Therefore, the case is dismissed without prejudice to the plaintiff.