**Elmer HILLESLAND, Plaintiff and Appellant,**

v.

**FEDERAL LAND BANK ASSOCIATION OF GRAND FORKS and Federal Land Bank of St. Paul, Defendants and Appellees.**

**Civ. No. 11225.**

Supreme Court of North Dakota.

May 28, 1987.

Fargo, for defendants and appellees, argued by Robert R. Reinhart, Jr.

ERICKSTAD, Chief Justice.

Elmer Hillesland appeals from a district court summary judgment dismissing his action against the Federal Land Bank Association of Grand Forks [the Association] and the Federal Land Bank of St. Paul [the Bank]. We affirm.

Hillesland began working at the Association in 1956. He received several promotions and in 1972 was named Chief Executive Officer. He held that position until his discharge on June 15, 1983.

Through his position with the Association Hillesland in early 1983 learned that Ray and Eva Westby, customers of the Association, were experiencing financial difficulties. He also learned that they had received an offer to purchase their farm from another Association customer. Hillesland contacted the Westbys to offer financial counseling. They responded by expressing their desire to sell the farm. Although the parties dispute whether Hillesland initiated the discussions of sale of the property, it is undisputed that these discussions eventually led to an offer to purchase the Westby farm by Hillesland's sons, David and Don.

In accordance with standard Association procedure, Hillesland submitted details of the proposed transaction on a "Prohibited Acts Report and Action" form to the Association board of directors for approval. After meeting in a closed session with the Westbys, the board approved the transaction. Hillesland then submitted the matter to the Bank's Review Committee in St. Paul. In its report, the Review Committee stated that it was "not in a position to disapprove" the transaction, but it did express concern over the appearance of a conflict of interest and prohibited any further direct involvement in the transaction by Hillesland. The sale of the land to Hillesland's sons was completed shortly thereafter.

The Bank subsequently launched an investigation into the matter. On June 15, 1983, two representatives of the Bank appeared at a meeting of the Association

Solberg, Stewart, Boulger & Miller, Fargo, for plaintiff and appellant, argued by Wayne O. Solberg.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Minneapolis, Minn. and Vogel, Brantner, Kelly, Knutson, Weir & Bye,

board of directors in Grand Forks and advised Hillesland that he was being discharged from his employment with the Association. The Bank's rationale for Hillesland's termination was that he had violated written standards of conduct, had damaged the image and reputation of the Association and the Bank, and had exercised poor business judgment.

Hillesland commenced this action against the Association and the Bank alleging violation of provisions of the Farm Credit Act, breach of contract, age discrimination, and tortious interference by the Bank with Hillesland's employment contract with the Association. The district court granted summary judgment dismissing Hillesland's action, and he appeals.

The following issues are dispositive of the appeal:

1) Is there an implied private right of action for wrongful discharge under the Farm Credit Act?

2) Did the trial court err in dismissing Hillesland's breach of contract claim?

3) Is there an implied covenant of good faith and fair dealing in employment contracts under North Dakota law?

4) Did the trial court err in dismissing Hillesland's age discrimination claim?

5) Did the trial court err in dismissing Hillesland's tortious interference with contract claim?

## IMPLIED PRIVATE RIGHT OF ACTION

Hillesland contends that the trial court erred in concluding that there is no implied private right of action for wrongful discharge under the Farm Credit Act. Hillesland contends that termination of Farm Credit System employees without cause is prohibited by 12 U.S.C. § 2227(a)(3), which provides in pertinent part:

"Appointments, promotions, and separations so made shall be based on merit and efficiency and no political test or qualification shall be permitted or given consideration."

The four-part test first enunciated in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26, 36 (1975), governs the determination of whether or not to imply a private right of action:

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' ... (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" [Citations omitted.]

Hillesland has failed to cite a single decision holding that there is an implied private right of action under the Farm Credit Act, 12 U.S.C. §§ 2001–2259. In fact, it appears that every court which has considered the issue has held that there is no implied right of action under the Act under the *Cort* test. *See Bowling v. Block*, 785 F.2d 556, 557 (6th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986); *Smith v. Russellville Production Credit Association*, 777 F.2d 1544, 1546–1548 (11th Cir. 1985); *Brekke v. Volcker*, 652 F.Supp. 651, 654 (D.Mont.1987); *Schroder v. Volcker*, 646 F.Supp. 132, 134–135 (D.Colo.1986); *Creech v. Federal Land Bank of Wichita*, 647 F.Supp. 1097, 1101 (D.Colo.1986); *Aberdeen Production Credit Association v. Jarrett Ranches, Inc.*, 638 F.Supp. 534, 537 (D.S.D.1986); *Farmer v. Wilkinson*, No. 4–85–1448 (D.Minn.1986); *Corum v. Farm Credit Services*, 628 F.Supp. 707, 719–720 (D.Minn.1986); *Spring Water Dairy, Inc. v. Federal Intermediate Credit Bank of St. Paul*, 625 F.Supp. 713, 717–720 (D.Minn. 1986); *Apple v. Miami Valley Production Credit Association*, 614 F.Supp. 119, 122 (S.D.Ohio 1985), *aff'd on other grounds*, 804 F.2d 917 (6th Cir.1986); *Hartman v. Farmers Production Credit Association of Scottsburg*, 628 F.Supp. 218, 222 (S.D.Ind. 1983); *Production*

*Credit Association of Worthington v. Van Iperen,* 396 N.W.2d 35, 37 (Minn.Ct.App. 1986); *Johansen v. Production Credit Association of Marshall- Ivanhoe,* 378 N.W.2d 59, 62 (Minn.Ct.App.1985). See also *Federal Land Bank of Saint Paul v. Overboe,* 404 N.W.2d 445, 448 (N.D.1987), and *Federal Land Bank of St. Paul v. Halverson,* 392 N.W.2d 77, 83 (N.D.1986) (*recognizing that federal courts have "unanimously" concluded that there is no private cause of action against entities of the Farm Credit System under the Farm Credit Act and regulations*).

Hillesland raises two distinctions between this case and those decisions which have refused to imply a private cause of action under the Act. First, Hillesland notes that most of those decisions involved actions by borrowers or customers of the Farm Credit System, whereas his claim is for wrongful discharge pursuant to provisions added in the 1959 amendments to the Farm Credit Act. Hillesland contends that those amendments were intended solely to benefit Farm Credit System employees and that an implied right of action under the amendments is appropriate.

Although the 1959 amendments did include some provisions dealing with employment considerations, there were a number of other provisions. The preamble to the 1959 enactment states that it is an act "To amend the Federal Farm Loan Act to transfer responsibility for making appraisals from the Farm Credit Administration to the Federal land banks, and for other purposes." Farm Credit Act of 1959, Pub.L. No. 86–168, 73 Stat. 384. Furthermore, the legislative history of the 1959 enactment indicates that its intent was to effectuate fully the express policy of the Farm Credit Act of 1953 to encourage and facilitate borrower participation in the management, control, and ownership of the Farm Credit System. *See, e.g.,* H.R.Rep. No. 287, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. & Ad.News 2123. Hillesland has failed to identify any legislative history to support his contention that the 1959 enactment was primarily an "employees' rights" bill, and we can find no evidence of

Congressional intent to create a private right of action on behalf of Farm Credit System employees. We also note that the one federal court which has addressed the issue has held that Farm Credit System employees do not have an implied private right of action for wrongful discharge under the Farm Credit Act. *See Corum v. Farm Credit Services, supra,* 628 F.Supp. at 719–720.

Hillesland also contends that the legislative history of the 1985 amendments to the Farm Credit Act suggests that Congress did intend to create a private remedy under the Act. In particular, Hillesland cites the comments of Representative De la Garza in floor debate of the Farm Credit Amendments Act of 1985, Pub.L. No. 99–205, 99 Stat. 1678:

"[A] major section of this bill does establish a set of borrowers' rights, and it would be my understanding that the rights of applicants and member-borrowers as set forth in this act and in the regulations of the Farm Credit Administration shall be enforceable in courts of law." 131 Cong.Rec. H11519 (daily ed. Dec. 10, 1985).

Initially we note that Representative De la Garza spoke only of enforcement of rights of applicants and member-borrowers. We also agree with those federal courts which have held that Representative De la Garza's statements concerning the 1985 amendments are irrelevant to a determination of whether Congress intended to create a private right of action under earlier-enacted provisions of the Farm Credit Act. *See Aberdeen Production Credit Association v. Jarrett Ranches, Inc., supra,* 638 F.Supp. at 536–537; *Corum v. Farm Credit Services, supra,* 628 F.Supp. at 719–720 n. 11; *Production Credit Association of Worthington v. Van Iperen, supra,* 396 N.W.2d at 38. We particularly agree with the following reasoning in *Aberdeen Production Credit Association v. Jarrett Ranches, Inc., supra,* 638 F.Supp. at 537:

"This Court does not read [Representative De la Garza's] statement to indicate that all regulations of the Farm Credit

System were intended to be enforceable in courts of law. The statement was expressly made in reference to 'borrowers' rights' established in Title III, § 301 et seq. of the 1985 Farm Credit Amendments Act—the 'rights' of disclosure and access to documents. The defendants are not claiming any violation of rights allegedly established under the 1985 amendments. Therefore, this Court is not required to consider the significance of the 1985 Farm Credit Amendments Act in determining the existence of a private cause of action. Because the acts complained of occurred prior to its passage, the statements of Representative De la Garza are irrelevant to the present action.... Moreover, this Court declines to find any significant probative value in using subsequent legislative history to establish the intent of Congress in enacting the original legislation in 1971." [Citations omitted.]

■ Having found no relevant legislative history which indicates a Congressional intent to create a private right of action for wrongful discharge on behalf of Farm Credit System employees, we conclude that no such private right of action exists under the Farm Credit Act.[1]

## BREACH OF CONTRACT

Hillesland contends that the trial court erred in dismissing his breach of contract claim because there are material fact issues remaining which preclude summary judgment.

Summary judgment is a procedural device available for the prompt and expeditious disposition of controversies without trial when, after viewing the evidence in a light most favorable to the opposing party and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. *Stensrud v. Mayville State College,* 368 N.W.2d 519, 521 (N.D.1985); *Williams County Social Services Board v. Falcon,* 367 N.W.2d 170, 174 (N.D.1985). Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon his pleadings but must present competent evidence by affidavit or other comparable means which raises an issue of material fact. *Federal Land Bank of Saint Paul v. Anderson,* 401 N.W.2d 709, 711 (N.D.1987). The resisting party has the responsibility of drawing the court's attention to the relevant testimony or evidence which raises a material factual issue or from which the court may draw an inference creating a material factual issue. *Binstock v. Tschider,* 374 N.W.2d 81, 83 (N.D.1985).

Section 34–03–01, N.D.C.C., is North Dakota's codification of the "at will" doctrine:

*"Termination of employment at will—Notice required.* An employment having no specified term may be terminated at the will of either party on notice to the other, except when otherwise provided by this title."

---

1. Hillesland also contends that the standards set out in the Farm Credit Act may form the basis for a common law wrongful discharge action under state law. Opposing counsel contends that this court has never formally recognized a common law wrongful discharge action sounding in tort and alleges that the federal statute, which does not give rise to an implied cause of action as a matter of federal law, should not be the basis for the creation of a new tort under state law.

In *R.B.J. Apartments, Inc. v. Gate City Savings & Loan Association,* 315 N.W.2d 284, 290 (N.D. 1982), we held that violation of the National Flood Insurance Act did not give rise to a common law negligence action under state law:

"The question of whether or not a common-law right of action exists for the violation of a federal statute is a matter of state law.... We are not able to find a state cause of action in this instance. The separation-of-powers doctrine and principles of federalism militate against the adoption of the federal statute as the standard of care in a state negligence action when no private cause of action, either explicit or implicit, exists in the federal statute." [Citation omitted.]

We conclude that under the facts of this case it would be inappropriate to provide a common law wrongful discharge action for violation of the Farm Credit Act provisions and regulations relied upon by Hillesland. *See also Production Credit Association of Worthington v. Van Iperen, supra,* 396 N.W.2d at 37–38 (refusing to base a state common law action on noncompliance with the Farm Credit Act).

In order to support his claim for breach of an employment contract Hillesland must produce evidence that there existed a contract for employment for a specified term or that he would only be terminated for cause. Hillesland asserts that he was employed permanently, to be fired only if he did not satisfactorily perform.

■ The only evidence relied upon by Hillesland to support his contention that he had a contract for permanent, lifetime employment was conclusory statements in his deposition that he had received the "impression" from his job interview in 1956 that he had been hired for a "permanent type" and "career type position." Hillesland could not recall the substance of the interview but only his "impressions." Hillesland admitted that he had never been told by anyone that he would only be terminated for cause.

In *Wadeson v. American Family Mutual Insurance Co.*, 343 N.W.2d 367, 371 (N.D.1984), we held that similar statements did not create a contractual agreement to discharge only for good cause:

"The fact that American Family 'publications represented employment with American Family as a "lifetime opportunity" and "permanent and stable business"', as Wadeson asserts, does not bring Wadeson's employment within the scope of cases ... where the employer had specifically said that discharge would only be for good cause. We do not read such statements used in recruiting new agents to be promises either of permanent employment or that one will be discharged only for good cause."

Hillesland has failed to draw our attention to any evidence in the record which raises a material factual issue regarding an alleged contractual agreement taking Hillesland's employment outside the at-will rule of Section 34–03–01, N.D.C.C. We conclude that the trial court did not err in granting summary judgment on this issue.

IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Hillesland contends that there is an implied covenant of good faith and fair dealing in all employment contracts and that the Bank and the Association breached that covenant when they terminated his employment. Hillesland alleges that there are material factual issues to be resolved on this issue which preclude summary judgment.

A brief historical perspective of the employment-at-will doctrine is helpful at this point. Prior to the mid-nineteenth century the prevailing theory was the "English rule," which provided that an employment without a set term was presumed to be for one year. Toward the end of the century the at-will rule was gaining popularity, and by the beginning of the twentieth century the at-will doctrine prevailed in the United States. *See Parnar v. Americana Hotels, Inc.*, 65 Hawaii 370, 652 P.2d 625, 627–628 (1982); *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 335 N.W.2d 834, 837 (1983); *see also*, Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith*, 93 Harv.L.Rev. 1816, 1824–1828 (1980). The classic statement of the at-will rule is that an employer may discharge an employee "for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong." *Payne v. Western & Atlantic Railroad Co.*, 81 Tenn. 507, 519–520 (1884), *overruled on other grounds, Hutton v. Watters*, 132 Tenn. 527, 179 S.W. 134, 137–138 (1915).

Congress and the legislatures of many states have enacted statutory provisions intended to afford some measure of protection to employees. *See, e.g.*, § 14–02.4–03, N.D.C.C. (employer may not discharge an employee because of race, color, religion, sex, national origin, age, physical or mental handicap, or status with respect to marriage or public assistance). Judicially created exceptions to or modifications of the at-will rule have also emerged to ameliorate the sometimes harsh consequences of strict adherence to the at-will rule. The two most common modifications are the public policy exception, which allows a discharged employee to recover if his termination violates a well established and im-

portant public policy,[2] and the imposition of an implied covenant of good faith and fair dealing into the employment contract.

As previously noted, the at-will rule is statutory in this state. Section 34–03–01, N.D.C.C., provides in pertinent part: "An employment having no specified term may be terminated at the will of either party on notice to the other." Our statute is derived from the virtually identical California statute, Cal.Lab.Code § 2922. Hillesland urges this court to imply into North Dakota employment contracts a covenant of good faith and fair dealing, as the California courts have done pursuant to that state's employment-at-will statute. Although we would normally attach great significance to a sister state's construction of a statute which served as the model for our state's provision, we decline to do so in this case.

The seminal California case is *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980). Cleary had been employed by American for eighteen years when he was dismissed in 1976. Although American claimed that Cleary was fired for theft, leaving his work area without authorization, and threatening a fellow employee, Cleary alleged that his termination resulted from his union activities. Cleary also asserted that American failed to follow its own regulations setting forth procedures for discipline and discharge of employees.

The Court of Appeal held that there was an implied covenant of good faith and fair dealing in every employment contract under California law and that Cleary had sufficiently pleaded facts of breach of that covenant to state a viable cause of action sounding in both tort and contract. The court relied heavily upon two factors—the length of Cleary's employment and the existence of express procedures regarding termination in the company regulations. Thus, the court held that "the longevity of the employee's service, together with the expressed policy of the employer, operate as a form of estoppel, precluding any discharge of such an employee by the employer without good cause." *Cleary v. American Airlines, Inc., supra,* 111 Cal.App.3d at 455–456, 168 Cal.Rptr. at 729.

In later cases, the California Court of Appeal has grappled with the appropriate application of *Cleary* in a variety of fact situations. For example, in *Khanna v. Microdata Corp.,* 170 Cal.App.3d 250, 262, 215 Cal.Rptr. 860, 867 (1985), the First District Court of Appeal held that the application of the implied covenant was not limited to those situations where the employment was long-term and the employer acted contrary to its own stated procedures for discharge:

"We cannot agree with appellant that the factors relied on by the court in *Cleary* are the *sine qua non* to establishing a breach of the covenant of good faith and fair dealing implied in every employment contract. The cases subsequent to *Cleary* discussing the breach of the implied covenant in employment contracts have indicated that the theory of recovery articulated in *Cleary* is not dependent on the particular factors identified in that case.... To the contrary, a breach of the implied covenant of good faith and fair dealing in employment contracts is established whenever the employer engages in 'bad faith action extraneous to the contract, combined with the obligor's intent to frustrate the [employee's] enjoyment of contract rights.' ... The facts in *Cleary* establish only one manner among many by which an employer might violate this covenant." [Citations omitted.]

A few months later, the Second District Court of Appeal expressly disagreed with the holding in *Khanna,* concluding that to prove a violation of the covenant the employee "must show longevity of service, and breach of an express employer policy regarding the adjudication of employee disputes." *Foley v. Interactive Data Corp.,*

---

**2.** In *Lee v. Walstad,* 368 N.W.2d 542, 547 (N.D. 1985), we found it unnecessary to decide whether the public policy exception applies in this state because the employee had failed to identify any clear public policy which his termination violated. Hillesland has not invoked the public policy exception in this case.

184 Cal.App.3d 241, 219 Cal.Rptr. 866, 871 (1985), *review granted*, 712 P.2d 891, 222 Cal.Rptr. 740 (1986). Noting that Foley's seven years at the company "fell short of the necessary longevity" and that Foley did not "adequately allege express formal procedures for terminating employees," the court held that dismissal of Foley's action was appropriate. *Foley, supra*, 219 Cal.Rptr. at 871.

In those other jurisdictions which have found an implied-in-law covenant of good faith and fair dealing in employment contracts the application of the rule has been far from uniform. The Arizona Supreme Court, although holding that an implied covenant of good faith and fair dealing did apply to employment contracts, disagreed with the California rule that the covenant created a duty to terminate only in good faith:

> "We find neither the logic of the California cases nor their factual circumstances compelling for recognition of so broad a rule in the case before us. Were we to adopt such a rule, we fear that we would tread perilously close to abolishing completely the at-will doctrine and establishing by judicial fiat the benefits which employees can and should get *only* through collective bargaining agreements or tenure provisions.... While we do not reject the propriety of such a rule, we are not persuaded that it should be the result of judicial decision." *Wagenseller v. Scottsdale Memorial Hospi-*

*tal*, 147 Ariz. 370, 710 P.2d 1025, 1040 (1985). [Citation omitted.]

The court intimated that in Arizona the covenant would be breached only by a termination which contravened public policy. *Wagenseller, supra*, 710 P.2d at 1041.

Similarly, in *Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 479 A.2d 781 (1984), the Supreme Court of Connecticut recognized that the covenant applied to employment contracts, but held that it should not be applied to transform an at-will employment into one terminable only for cause. To do so, the court stated, would be to "render the court a bargaining agent for every employee not protected by statute or collective bargaining agreement." *Magnan, supra*, 479 A.2d at 788. The court concluded that an at-will employee could challenge his dismissal only when the reason for discharge involved a violation of an important public policy. *Magnan, supra*, 479 A.2d at 789.

Other jurisdictions similarly limit the rule. Massachusetts apparently applies the rule only if the discharge results in loss of compensation that is clearly identifiable and related to the employee's past service, such as future commissions based upon past sales. *Cort v. Bristol-Myers Co.*, 385 Mass. 300, 431 N.E.2d 908, 910–911 (1982). Alaska purports to follow the rule as formulated in Massachusetts. *See Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983).[3]

**3.** Montana has taken a somewhat different approach, holding that the covenant cannot be implied in law but may be implied in fact based upon the circumstances of each particular case. *Dare v. Montana Petroleum Marketing Co.*, —— Mont. ——, 687 P.2d 1015 (1984). The court held that "[i]mplication of the covenant depends upon the existence of objective manifestations by the employer giving rise to the employee's reasonable belief that he or she has job security and will be treated fairly." *Dare, supra*, 687 P.2d at 1020. At least one justice disagreed, arguing in concurrence that the "covenant of good faith and fair dealing is implicit in every employment contract irrespective of a reasonable belief regarding job security." *Dare, supra*, 687 P.2d at 1021 (Morrison, J., concurring).

In a recent case not cited by the parties, *Bakken v. North American Coal Corp.*, 641 F.Supp. 1015, 1022 (D.N.D.1986), the Federal

District Court of North Dakota predicted that North Dakota would adopt the Montana formulation and imply the covenant only based upon a reasonable belief of job security:

> "Because North Dakota has codified its employment at will rule, this court concludes that Bakken's cause of action must be based on NACC's representations, *i.e.*, that the implied covenant of good faith and fair dealing, if it exists, must be implied in fact rather than implied in law. To recognize an implied in law covenant of good faith and fair dealing in an employment at will contract would directly contravene the employment at will statute. Because it reconciles an exception to the employment at will rule with an 'at will' statute very similar to the North Dakota statute, this court finds the Montana court's formulation of the issue to be helpful."

Given the somewhat erratic development of this doctrine in the courts, we decline to follow either the California formulation or any of the variant theories developed in other jurisdictions. We choose to align ourselves with the emerging majority of our sister states which have rejected the implication of a covenant of good faith and fair dealing in employment contracts. *See, e.g., Zick v. Verson Allsteel Press Co.,* 623 F.Supp. 927 (N.D.Ill.1985) (applying Illinois law); *Parker v. National Corporation for Housing Partnerships,* 619 F.Supp. 1061 (D.D.C.1985) (applying District of Columbia law); *Satterfield v. Lockheed Missiles and Space Co.,* 617 F.Supp. 1359 (D.S.C.1985) (applying South Carolina law); *Fletcher v. Wesley Medical Center,* 585 F.Supp. 1260 (D.Kan.1984) (applying Kansas law); *Parnar v. Americana Hotels, Inc.,* 65 Hawaii 370, 652 P.2d 625 (1982); *Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853, 858 (Minn.1986); *Neighbors v. Kirksville College of Osteopathic Medicine,* 694 S.W.2d 822 (Mo.Ct.App.1985); *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983); *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081 (1984); *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983).

We agree entirely with the policies and reasoning enunciated by the Supreme Court of Washington, sitting en banc, in *Thompson v. St. Regis Paper Co., supra,* 685 P.2d at 1086–1087:

"A number of courts have utilized a contract theory as a means of ameliorating the harshness of the rule. One contract theory utilized by a limited number of these courts is the adoption of a 'bad faith' exception.... Generally, these courts hold that in every employment contract there is an implied covenant of good faith and fair dealing which limited the employer's discretion to terminate an at will employee. Appellant urges us to adopt this approach.

"We do not adopt this exception. An employer's interest in running his business as he sees fit must be balanced

against the interest of the employee in maintaining his employment and this exception does not strike the proper balance. We believe that

"to imply into each employment contract a duty to terminate in good faith would ... subject each discharge to judicial incursions into the amorphous concept of bad faith.

*Parnar v. Americana Hotels, Inc.,* 65 Hawaii 370, 377, 652 P.2d 625, 629 (1982); *Accord, Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983); *Daniel v. Magma Copper Co.,* 127 Ariz. 320, 620 P.2d 699 (Ct.App.1980). Moreover, while an employer may agree to restrict or limit his right to discharge an employee, to imply such a restriction on that right from the existence of a contractual right, which, by its terms has no restrictions, is internally inconsistent. *Accord, Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). Such an intrusion into the employment relationship is merely a judicial substitute for collective bargaining which is more appropriately left to the legislative process."

Hillesland contends that we "endorsed the good faith standard" in *Wadeson v. American Family Mutual Insurance Co.,* 343 N.W.2d 367 (N.D.1984). In *Wadeson,* the trial court instructed the jury that there was an implied covenant of good faith and fair dealing in employment contracts and that American Family could be held liable for damages if it dealt unfairly or acted in bad faith in discharging Wadeson. Because the jury concluded that American Family had not breached the covenant we expressly declined to consider whether the instruction given was a correct statement of North Dakota law. *See also Hennum v. City of Medina,* 402 N.W.2d 327, 329 n. 1 (N.D.1987) (parties stipulated that plaintiff's discharge did not breach any implied covenant of good faith and fair dealing); *Bailey v. Perkins Restaurants, Inc.,* 398 N.W.2d 120, 123 n. 2 (N.D.1986) (issue of breach of the implied covenant of good faith and fair dealing would not be addressed on appeal when it had not been

raised in the trial court). The question which we resolve today was expressly left open in *Wadeson,* and nothing contained in our opinion in that case, or in *Hennum* or *Bailey,* runs contrary to the result in this case.

■ The Legislature has clearly spoken in Section 34-03-01, N.D.C.C. Adoption of the exception urged by Hillesland would effectively abrogate the at-will rule as applied in this state. We refuse to recognize a cause of action for breach of an implied covenant of good faith and fair dealing where, as in this case, the claimant relies upon an employment contract which contains no express term specifying the duration of employment. Accordingly, we conclude that the district court did not err in granting summary judgment against Hillesland on this issue.

## AGE DISCRIMINATION

■ Hillesland contends that his termination violated the provisions of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, and Chapter 14-02.4, N.D.C.C. The trial court concluded that Hillesland failed to raise a genuine issue of material fact on the age discrimination issue. We have thoroughly reviewed the applicable standards and the evidence presented by Hillesland in opposition to the motion for summary judgment, and we agree completely with the following reasoning of the trial court:

"Plaintiff's fifth claim is for age discrimination. Defendants' Motion for Summary Judgment should be granted because plaintiff has been unable to demonstrate the capability of presenting a prima facie case that his discharge was based in whole or in part on his age and because, even were he able to do so, plaintiff has been unable to make the requisite showing of any concrete, specific evidentiary basis sufficient to create a material issue of fact that the legitimate business explanation of his discharge substantiated by defendants is pretextual. Plaintiff offers no proof of any age-conscientious statements, writings, policies or discriminatory actions by defend-

ants to or about or with reference to himself or anyone else. He offers no statistical evidence from which any inference of age discrimination might be drawn. He points to no pattern of adverse treatment of older similarly situated employees. His references to three persons who voluntarily accepted early retirement incentives are irrelevant to these issues. His speculations about the potential implications of a territory realignment plan also fail to create any genuine issue of age discrimination. His assertion of a prima facie case rests solely on the notion that he was replaced by a younger man.... The two individuals he identifies as possible replacements are, he concedes, employees who merely temporarily assumed his former duties in addition to their then-existing duties, without any increase in pay. The only person to appear on the scene as a new hire or transfer to assume any of plaintiff's former duties after plaintiff left (i.e., the only true 'replacement' candidate) was a man who is not significantly (less than 18 months) younger than plaintiff. Plaintiff simply has failed to offer any evidentiary showing which would support a jury finding of age discrimination, especially in the face of defendants' plainly articulated legitimate business explanation that plaintiff was discharged because of his involvement with the Westby Transaction."

We conclude that the trial court did not err in granting summary judgment on the age discrimination claim.

## TORTIOUS INTERFERENCE WITH CONTRACT

■ Hillesland contends that the Bank unlawfully interfered with his employment contract with the Association by coercing the Association into terminating his employment. Hillesland's argument ignores the structure of the Farm Credit System. The Bank, through statute and regulations, exercises broad supervisory power over the Association, including approval of appointment and compensation of the Association's chief executive officer. *See* 12 U.S.C. § 2012. The United States Court of Ap-

peals for the Eighth Circuit has held that the nearly identical statutory and regulatory scheme governing Production Credit Associations and the Federal Intermediate Credit Banks authorizes the Intermediate Credit Banks to terminate the employment of a PCA chief executive officer. *Bailey v. Federal Intermediate Credit Bank of St. Louis*, 788 F.2d 498 (8th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 317, 93 L.Ed.2d 290 (1986). The reasoning of the court in *Bailey* applies with equal force to the supervisory powers of a Federal Land Bank.

We also note that Hillesland conceded in his deposition that he knew the Bank had the power to discharge him as president of the Association. If the Bank had the authority to discharge Hillesland, its discharge of him could not constitute tortious interference with Hillesland's contract with the Association. *Cf. Hennum v. City of Medina*, 402 N.W.2d 327 (N.D.1987). We conclude that the trial court did not err in granting summary judgment dismissing this claim.

The judgment of the district court is affirmed.[4]

VANDE WALLE and GIERKE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.

PEDERSON, Surrogate Justice, dissenting in part.

I agree with the opinion authored by Chief Justice Erickstad in all respects except for the dicta disposition of issue number 3,—Implied Covenant of Good Faith and Fair Dealing.

As I read the pleadings in this case, the termination was not "without cause" but for the exercise of poor judgment. I believe, nevertheless, that in all relationships between civilized persons, there is an obligation to not act in bad faith. Under circumstances that are appropriate, where there is an aggravated breach, unconscionable conduct, the court should provide a remedy.

MESCHKE, J., concurs.

---

4. Hillesland has also raised an estoppel argument which he concedes is applicable only if a showing of cause for termination is required. Because we agree with the trial court that Hillesland was an at-will employee who could be discharged without cause, we find it unnecessary to address the estoppel issue.