Floyd T. NETH and Janice S. Neth, Plaintiffs,

v.

**FEDERAL LAND BANK OF JACKSON,** formerly known as Federal Land Bank of New Orleans, Defendant.

Civ. A. No. 88–0324–B–C.

United States District Court, S.D. Alabama, S.D.

Dec. 30, 1988.

E. Elliott Barker, Barker, Janecky & Copeland, Mobile, Ala., for defendant.

J. Nixon Daniel, III, Beggs & Lane, Pensacola, Fla., Julian B. Brackin, Foley, Ala., for plaintiffs.

## ORDER

BUTLER, District Judge.

This cause is before the Court on defendant's motion to dismiss counts two and three of plaintiffs' complaint. Having carefully reviewed the record as a whole and the briefs of counsel, and having considered arguments made by counsel before the Honorable William E. Cassady, United States Magistrate, the Court is of the opinion that the motion is due to be granted for the following reasons.

## BACKGROUND

On February 19, 1979, the plaintiffs executed and delivered to defendant Federal Land Bank of Jackson in Receivership, by R.E.W. Enterprises, Inc., Receiver (Land Bank), a mortgage on secured real property to secure an indebtedness owed to the Land Bank by the plaintiffs. The plaintiffs subsequently defaulted, and the mortgage was foreclosed on December 4, 1987, leaving the Land Bank with a reported deficiency in the amount of $298,185.96, plus interest, fees, and costs.

On January 6, 1988, President Reagan signed into law the Farm Credit Act of 1987 (the Act). See 12 U.S.C. §§ 2001–2617. The Act amended the Farm Credit Act of 1971 as amended in 1985, and, among other things, provided to previous owners of real property a right of first refusal in such real property acquired by the Land Bank by foreclosure and subsequently offered for sale. See 12 U.S.C. § 2219a.

Claiming that the defendant had violated the Act, the plaintiffs filed suit in Mobile County Circuit Court on April 8, 1988, which action was removed to this Court on April 19, 1988. Plaintiffs allege in count two that the Land Bank's foreclosure on their property "is unconscionable and against public policy in that the foreclosure sale was conducted to deprive Plaintiffs from the rights and remedies extended to

---

distress[ed] farmers under the Agricultural Credit Act of 1987." Count three alleges violations of the Act by the Land Bank's rejection of plaintiffs' offer to repurchase the property and by the Land Bank's counteroffer of "exorbitant and outrageous prices and without first obtaining an [accredited] appraisal." The plaintiffs ask that the foreclosure sale be set aside and be declared null and void, and that the Land Bank be ordered to convey to plaintiffs the property foreclosed upon for the sum of $134,000.00.

The defendant filed a motion to dismiss based on failure to state a claim on which relief can be granted, contending that the Act does not apply to a former borrower whose land was foreclosed upon before the effective date of the Act. The defendant amended the motion to assert that the Act provides no express or implied private right of action. Oral argument was had before the Magistrate on August 26, 1988.

### PRIVATE RIGHTS OF ACTION UNDER THE ACT

It is clear that the Act does not provide an express private right of action. *See* 12 U.S.C. §§ 2001–2617. It is equally clear that, prior to amendment of the Act as of January 6, 1988, no implied private right of action existed under the Farm Credit Act of 1971, as amended in 1985. *See, e.g., Redd v. Federal Land Bank of St. Louis,* 851 F.2d 219 (8th Cir.1988); *Bowling v. Block,* 785 F.2d 556 (6th Cir.), *cert. denied sub nom Bower v. Lyng,* 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986); *Smith v. Russellville Production Credit Association,* 777 F.2d 1544 (11th Cir.1985). The issue, then, is whether an implied private right of action exists under the amendments to the Act which became effective January 6, 1988.

### *The Parameters of Analysis*

The United States Supreme Court has provided an analytical framework for guidance in determining whether federal statutes create implied private rights of action. *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), set forth four factors to be considered:

1. Whether the plaintiffs are one of the class for whose especial benefit the statute was enacted;

2. Whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one;

3. Whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy; and

4. Whether the cause of action is one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on state law.

*Id.* at 78, 95 S.Ct. at 2088.

The *Cort* factors, given equal weight in that decision, were refined in a number of subsequent opinions to focus on one essential factor: legislative intent. *See, e.g., Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988); *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *California v. Sierra Club,* 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).[1] The legislative intent factor is of such critical importance that once its presence or absence is ascertained, the Court need not "trudge through all four of the [*Cort*] factors." *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 388, 102 S.Ct. 1825, 1844, 72 L.Ed.2d 182 (1982). *See also National Sea Clammers,* 453 U.S. at 13, 101 S.Ct. at 2622.

In determining legislative intent, the Court considers several factors. "[T]he

---

1. Indeed, Justice Scalia is of the opinion that legislative intent is the determinative factor, with the other three *Cort* factors to be used as indicators of the existence of legislative intent. *See Thompson v. Thompson,* 484 U.S. 174, ——, 108 S.Ct. 513, 521, 98 L.Ed.2d 512, 526 (1988) (Scalia, J., concurring) ("It could not be plainer that we effectively overruled the *Cort v. Ash* analysis in *Touche Ross & Co. v. Redington* ... and *Transamerica Mortgage Advisors, Inc. v. Lewis,* ... converting one of its four factors (congressional intent) into *the determinative factor,* with the other three merely indicative of its presence or absence. [citations omitted]").

starting point for interpreting a statute is the language of the statute itself; absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Further, a reviewing court must presume that the legislature, when amending a statute, was aware of the judicial construction placed upon the statute, and that, absent indications of intent to the contrary, the legislature did not see fit to change such judicial construction in the course of the amendment. *See Florida Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1518 (11th Cir.1985). Other significant factors include "the purpose the original enactment served, the discussion of statutory meaning in committee reports, the effect of amendments—whether accepted or rejected—and the remarks in debate preceding passage." *Rogers v. Frito–Lay, Inc.*, 611 F.2d 1074, 1080 (5th Cir.), *cert. denied sub nom Moon v. Roadway Express, Inc.*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980). As noted, the Act does not contain an express private right of action, and, prior to amendment, had been construed by the courts as not providing an implied private right of action. An intent by the Congress to imply a private right of action at the time of the most recent amendment must therefore be clearly expressed.

### The Legislative History

Congress declared that its policy and objectives in enacting the Farm Credit Act of 1971 were to create a system to provide "sound, adequate, and constructive credit and closely related services" to American farmers and ranchers, and to encourage the participation of farmers and ranchers in such system. 12 U.S.C. § 2001(a), (b). In response to an agricultural recession, the 1971 Act was amended effective 1986 to declare that the credit needs of farmers and ranchers are best served by providing equitable and competitive interest rates derived on the basis of certain cost-effective factors. 12 U.S.C. § 2001(c).

In 1987, Congress considered further efforts to strengthen the Farm Credit System in 1987. Representative Watkins proposed an amendment which would specifically provide a private cause of action to borrowers for violations of the Act. 133 Cong.Rec. H00000–30 (1987). Representative Glickman inquired as to whether borrowers had the right to sue "under State law, but not Federal law." Representative Watkins replied that "some States do allow it, some States do not," and explained that his amendment was designed to clarify the situation. During the discussion, other legislators raised questions about the amendment, referring to potential paralysis of the Farm Credit System, the opening of a Pandora's box, and a "shotgun" approach.[2] The Watkins amendment was modified by deleting a reference to the Farm Credit Administration, Representative Watkins observing that "this total language is in the Senate bill, so therefore it will be in the conference...." *Id.*

In the Senate, Senator Burdick, for himself and Senator Sanford, proposed an amendment to the Watkins amendment which would substitute "person" for "borrower," because, in Senator Burdick's view, "Currently, any person has the right to sue...."[3] 133 Cong.Rec. S16993–01 (1987). Ultimately, the Senate withdrew the Burdick amendment and opposed the Watkins amendment in conference. The conference committee declined to adopt the Watkins amendment, stating in its report only that "[t]he Conference substitute [bill] deletes the House provision [i.e., the Watkins amendment, referred to previously in the report]." H.R.Conf.Rep. No. 100–490, 100th Cong., 1st Sess. 178 (1987), *reprinted in 1987 U.S.Code Cong. & Admin. News* pp. 2723, 2973. (1987).

It may be said that the purpose of the Act is to improve the income and well-being

---

**2.** It was specifically noted by Representative Madigan that "some of the language in the amendment is at odds with things in current law." 133 Cong.Rec. H00000–30 (1987).

**3.** As previously noted, there was neither an express private right of action nor an implied one under the Act prior to amendment. *See, e.g., Redd v. Federal Lank Bank of St. Louis*, 851 F.2d 219 (8th Cir.1988).

of farmers and ranchers by furnishing sound, adequate, and constructive credit; that is, using the language of the first of the *Cort* factors, farmers and ranchers are the class for whose special benefit the statute was created.[4] The fact that the enactment was designed to benefit a particular class does not, however, without more, establish intent that the statute be enforced by means of a private right of action. *See, e.g., Hartman v. Farmers Production Credit Association,* 628 F.Supp. 218 (S.D. Ind.1983). Rather, the Court finds that the legislative record is not sufficiently conclusive to permit the inference that Congress intended to imply a private right of action under the Act as amended. Plaintiffs contend in essence that Congress thought that borrowers already had the right to sue and that "the relevant inquiry is not whether Congress correctly perceived the then state of the law, rather what its perception of the law was" (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 711, 99 S.Ct. 1946, 1965, 60 L.Ed.2d 560 (1979)).[5]

In the case before this Court, the legislative record does not clearly indicate that Congress perceived that previous owners had the right to sue under federal law and that Congress intended to preserve such a right. At best, the record is ambiguous, which does not permit this Court to find "a clearly expressed legislative intention" to imply a private right of action. Rather, this Court finds that the legislators sponsoring amendments to the Act which would clearly provide a private right of action favored such a private right of action, that one of the sponsoring legislators thought that previous owners could sue in some states and not in others, that the conference committee considered the private right of action amendment and rejected it, and that the bill as enacted does not contain language granting or implying a private right of action.[6] As noted by the Land Bank, "[t]o contend that the Conference Committee (and therefore Congress) intended to create a private cause of action by not enacting legislative provisions is speculation and conjecture and violative of the specificity of indication of intent requirement." This Court does not presume to act where Congress has not. Accordingly, the Court finds that Congress has not provided a private right of action under the Act.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss counts two and three of plaintiff's complaint is due to be GRANTED. It is so ORDERED.

---

4. It is assumed that plaintiffs are farmers or ranchers, although the complaint does not so state, and the party appearing at oral argument was addressed as "Dr. Neth."

5. Following *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), and *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the Fifth Circuit stated that "it seems reasonable to conclude" that the analysis suggested by *Cannon* "is no longer the law."

*Noe v. Metropolitan Atlanta Rapid Transit Authority,* 644 F.2d 434, 439 (5th Cir. Unit B), *cert. denied,* 454 U.S. 1126, 102 S.Ct. 977, 71 L.Ed.2d 114 (1981) (precedent for the Eleventh Circuit by virtue of *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981)).

6. The remarks of legislators who sponsor bills "are not controlling in analyzing legislative history." *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 118, 100 S.Ct. 2051, 2061, 64 L.Ed.2d 766 (1980).