Carlos **GARY**, Plaintiff,

v.

**D. AGUSTINI & ASOCIADOS, S.A.,** Hallmark Cruise Services, Inc., Stellar Cruise Services, Ltd., and Stellar Maritime Services, Inc., Defendants.

No. 94–0325–CIV.

United States District Court, S.D. Florida.

Oct. 7, 1994.

Sharon L. Wolfe, Charles R. Lipcon, Miami, FL, for plaintiff.

Peter W. Homer, Lorelei J. Van Wey, Greer, Homer & Bonner, P.A., Miami, FL, for D. Agustini & Asociados, S.A.

George O. Mitchell, Bruce R. Marx, Mitchell, McAlpin & Associates, P.A., Miami, FL, for Hallmark Cruise Services, Inc. and Stellar Cruise Services, Ltd.

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon the following motions:

(1) Defendant D. Agustini & Asociados, S.A.'s ("Agustini") motion to dismiss amended complaint;

(2) Agustini's request for oral argument on its motion to dismiss;

(3) Plaintiff Carlos Gary's joinder in the request for oral argument filed by Agustini; and

(4) Defendants Stellar Cruise Services, Ltd. ("Stellar") and Hallmark Cruise Services, Inc.'s ("Hallmark") motion to dismiss the amended complaint, or in the alternative, for a more definite statement.

For the reasons stated below, the Court grants in part the defendants' motions to dismiss the amended complaint. The remaining motions are denied as moot.

### PROCEDURAL AND FACTUAL BACKGROUND

On June 4, 1994, Plaintiff Carlos Gary filed an amended seaman's class action complaint, invoking this Court's admiralty and maritime jurisdiction. Gary asserts that he is a seaman within the meaning of 28 U.S.C. § 1916, which entitles a seaman to commence an action in federal court without prepayment of costs. According to Gary, the defendants are maritime employers engaged in the business of supplying crew members, such as himself, to passenger vessels that sail in the United States and international waters.

As the basis for this class action suit, Gary alleges that he was required to pay an illegal fee of $450 to one or more of the defendants for an employment letter, prior to obtaining a position as utility man aboard the cruise ship Regent Rainbow. The amended complaint states that the Regent Rainbow sails out of Tampa, Florida, but provides no indication of its registry. Moreover, Gary does not state where he made the allegedly illegal payment of $450 to the defendants. The amended complaint refers to the employment letter Gary claims to have obtained in exchange for the $450 payment as Exhibit # 1. A review of the record reveals, however, that Gary failed to attach any exhibits to his pleading.

According to Gary, all of the potential class members, which he estimates to number 2,500, have been required to pay similarly illegal fees to one or more of the defendants in exchange for employment letters, prior to obtaining positions as crew members on passenger ships. Gary does not specify whether the potential class members sought work on the Regent Rainbow, or on other, unnamed, passenger ships, nor where those allegedly illegal payments were made.

Gary's amended complaint is in four counts: Count I alleges violations of 46 U.S.C. § 10314; Count II alleges conspiracy to violate 46 U.S.C. § 10314; Count IV is a claim for common law conversion; and Count V is a claim for unjust enrichment.[1] Defendant Agustini seeks dismissal of the amended

---

1. There is no Count III in the amended complaint.

complaint on the following grounds: failure to state a claim upon which relief can be granted as to all four counts, pursuant to *Fed.R.Civ.P.* 12(b)(6); insufficiency of service of process, pursuant to *Fed.R.Civ.P.* 12(b)(5); and lack of personal jurisdiction, pursuant to *Fed.R.Civ.P.* 12(b)(2). Defendants Stellar and Hallmark have moved for dismissal of the amended complaint on the following grounds: failure to state a claim upon which relief can be granted as to all four counts, and as to the prayers for punitive damages and attorney's fees, pursuant to *Fed.R.Civ.P.* 12(b)(6); and insufficiency of process and/or insufficiency of service of process as to Stellar, pursuant to *Fed.R.Civ.P.* 12(b)(4) and (5).[2] In addition, all three defendants challenge the sufficiency of Gary's pleading as a class action complaint, within the meaning of *Fed.R.Civ.P.* 23. Stellar and Hallmark also move, in the alternative, for a more definite statement of the allegations contained in the amended complaint. The parties have requested that the Court first address the threshold issue of whether Gary has a private right of action under 46 U.S.C. § 10314(b), upon whose alleged violation Gary predicates this class action suit.

### PRIVATE CAUSE OF ACTION ANALYSIS FOR SECTION *10314(b)*

■ Title 46, United States Code, Section 10314 provides, in pertinent part:

(a)(1) A person may not—

(A) pay a seaman wages in advance of the time when the seaman has earned the wages;

(B) pay advance wages of the seaman to another person; or

(C) make to another person an order, note, or other evidence of indebtedness of the wages, or pay another person, for the engagement of seamen when payment is deducted or to be deducted from the seaman's wage.

(2) a person violating this subsection is liable to the United States Government for a civil penalty of not more than $500. A payment made in violation of this subsec-

tion does not relieve the vessel or the master from the duty to pay all wages after they have been earned.

(b) A person demanding or receiving from a seaman or an individual seeking employment as a seaman, remuneration for providing the seaman or individual with employment, is liable to the Government for a civil penalty of not more than $500.

(c) This section applies to a foreign vessel when in waters of the United States. An owner, charterer, managing operator, agent, or master of a foreign vessel violating this section is liable to the Government for the same penalty as an owner, charterer, managing operator, agent, or master of a vessel of the United States for the same violation.

46 U.S.C.A. § 10314 (West Pamphlet 1994).

Gary alleges that the defendants have violated section 10314(b) by charging him a fee in order to receive an employment letter. Section 10314(b) imposes a civil penalty on persons engaging in such conduct, but does not explicitly provide a remedy to the seaman who pays the illegal fee. In his response to the defendants' motions to dismiss, Gary acknowledges that section 10314(b)'s statutory language does not expressly provide seamen with a private right of action. Gary argues, however, that an implied right of action exists. In Gary's words, "Quite simply, this is a very common sense cause of action: it is illegal for shipowners to take pay-off money from unwitting seamen who need jobs; those seaman (sic) should be entitled to their money back." (Plaintiff's Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss Amended Complaint, at 4).

The task of implying a private cause of action from the violation of a federal statute, however, is not as simplistic as Gary advocates with his "common sense" approach. In *Cort v. Ash*, the United States Supreme Court articulated the following four factors that courts should take into account when carrying out this task:

---

**2.** Although Hallmark and Stellar also cite Rule 12(b)(2) in support of their motion to dismiss, they do not raise any personal jurisdiction issues in the motion.

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975) (citations omitted).

In opinions following the *Cort* decision, the Supreme Court has converted the congressional intent factor "into *the determinative factor*, with the other three merely indicative of its presence or absence." *Thompson v. Thompson*, 484 U.S. 174, 189, 108 S.Ct. 513, 521, 98 L.Ed.2d 512 (1988) (Scalia, J., concurring in the judgment). Although not as forcefully as Justice Scalia's concurrence, the *Thompson* majority opinion authored by Justice Marshall also recognizes the preeminence of congressional intent analysis when, acknowledging the guiding role of the *Cort* factors, it states, "In determining whether to infer a private cause of action from a federal statute, our focal point is Congress' intent in enacting the statute." *Thompson*, 484 U.S. at 179, 108 S.Ct. at 516. Three years after the *Thompson* decision, the Supreme Court again stressed the primacy of congressional intent analysis, declaring that, "[R]ecognition of any private right of action for violating a federal statute must ultimately rest on congressional intent to provide a private remedy." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1101, 111 S.Ct. 2749, 2763, 115 L.Ed.2d 929 (1991) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979)). In light of these developments, the Court's analysis shall focus on discerning congressional intent.

■ In ascertaining congressional intent to provide a private remedy, a court must review "the language or structure of the statute," and "the circumstances of its enactment." *Thompson*, 484 U.S. at 179, 108 S.Ct. at 516 (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979)). As previously noted, nothing in the statutory language indicates congressional intent to provide a private right of action for violations of section 10314(b). Congress expressly provided a remedy for such violations, however, in the form of the imposition of a civil penalty, payable to the United States Government. "[A]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Neth v. Federal Land Bank*, 717 F.Supp. 1478, 1480 (S.D.Ala.1988) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Finding no evidence of congressional intent to provide a private remedy in the statutory language, the Court proceeds to review the statutory framework, and the circumstances of the statute's enactment—as manifested in the legislative history and the relevant case law—for additional indicia of legislative intent.

*The statutory framework*

In 1983, Congress enacted Public Law 98–89, "An Act to revise, consolidate, and enact certain laws related to vessels and seamen as subtitle II of title 46, United States Code, 'Shipping'." The need for this major revision and recodification work arose from the "poorly organized, duplicative, [and] often obsolete" status of the maritime laws of the United States, after nearly two centuries of piecemeal promulgation. H.R.Rep. No. 338, 98th Cong. 1st Sess. 113, *reprinted in* 1983 U.S.C.C.A.N. 924, 924. Under the recodification scheme, Part G of Subtitle II, entitled "Merchant Seamen Protection and Relief," consolidates statutory provisions pertaining to merchant seamen. Section 10314 falls within Chapter 103, entitled "Foreign and Intercoastal Voyages," of Part G. A review of this chapter reveals that when Congress

intended to provide seamen with a private right of action it did so explicitly. Section 10313, for example, which contains the provisions governing seamen's entitlement to wages, explicitly states, "The courts are available to the seaman for the enforcement of this section." 46 U.S.C.A. § 10313(i) (West Pamphlet 1994). Moreover, section 10314(a), which prohibits the payment of advance wages to seamen, not only provides a civil penalty for violations of the statute, but also provides a remedy for the aggrieved seaman by stating, "A payment made in violation of this subsection does not relieve the vessel or the master from the duty to pay all wages after they have been earned." 46 U.S.C.A. § 10314(a) (West Pamphlet 1994). Thus, within the statutory framework immediately surrounding section 10314(b), Congress has made its intention to create a private cause of action clear through statutory language. "If the express language of a statute creates some private causes of action, the law may presume Congress did not intend to create causes of action unmentioned by the statute." *McKinnon v. Blue Cross and Blue Shield,* 935 F.2d 1187, 1193 (11th Cir.1991).[3]

### *The legislative history*

Next, the Court reviews the legislative history accompanying enactment of the statute. The introductory section of the House Report declares:

> Some of the oldest and most frequently amended of our maritime laws are those administered by the Coast Guard. These laws, which are referred to in this Report as maritime safety laws, are related primarily to the safety of merchant vessels. They also cover, however, the safety [of] recreational vessels, the protection of merchant seamen, and the protection of the environment.

H.R.Rep. No. 338, 98th Cong. 1st Sess. 113, *reprinted in* 1983 U.S.C.C.A.N. 924, 925. The report continues:

> The Committee intends and hopes that the interpretation of the maritime safety laws as codified and enacted by this bill will be based on the language of the bill itself. The bill, as report, is based on that premise. There should, therefore, be little or no occasion to refer to the statutes being repealed in order to interpret the provisions of this bill.
>
> The Committee also feels, as the courts have held, that the literal language of the statute should control the disposition of the cases. There is no mandate in logic or in case law for reliance on legislative history to reach a result contrary to the plain meaning of the statute, particularly where that plain meaning is in no way unreasonable."

*Id.* at 932. The portion of the legislative history's section-by-section review that addresses section 10314 states:

> Section 10314 forbids advance payment of wages to seamen prior to the commencement of the seaman's employment. It provides a civil penalty of $500 for any person making such a payment, and for any person demanding or receiving remuneration for providing a seaman with employment. This means that the use of employment agencies for hiring seamen is prohibited.

*Id.* at 1008.

A review of these passages indicates that Congress intended for the literal language of section 10314(b) to control. Moreover, the report acknowledges that the use of employ-

---

**3.** Gary also argues that 46 U.S.C. § 11107 supports his claim. Section 11107 provides: "An engagement of a seaman contrary to a law of the United States is void. A seaman so engaged may leave the service of the vessel at any time, and is entitled to recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher." 46 U.S.C.A. § 11107 (West Pamphlet 1994). According to Gary, "If the illegal engagement is void, the necessary corollary is that the seaman is entitled to his money back." (Plaintiff's Con- solidated Memorandum in Opposition to Defendants' Motions to Dismiss Amended Complaint, at 10). In this action, however, Gary does not seek to declare his engagement void, nor does he seek wages for having left the service of the Regent Rainbow, as authorized by section 11107. Had Gary predicated his suit on section 11107, he might be justified in relying on that section to claim that he is "entitled to his money-back." Gary's citation of section 11107 as supportive of an implied private action under section 10314(b), however, defies logic.

ment agencies to recruit seamen is prohibited, but is silent regarding a private cause of action for seamen recruited through such means, in violation of the statute. Therefore, the Court concludes that the legislative history yields no indicia of congressional intent to provide an implied private cause of action for violations of section 10314(b).

### The case law

Finally, the Court reviews the cases which, according to Gary, have implied a private cause of action for the applicable portion of section 10314(b)'s predecessor statute, 46 U.S.C. § 599(a). In *The Sonderborg*, 47 F.2d 723, 728–29 (4th Cir.), *cert. denied sub nom., Akties, Dampskibsselskabet Donneborg v. Mikkelsen*, 284 U.S. 618, 52 S.Ct. 7, 76 L.Ed. 527 (1931), the court determined that seamen were entitled to recover wage deductions, representing the cost of clothing and board furnished to them prior to sailing, pursuant to section 599(a)'s prohibition against payment of advance wages. Similarly, in *Bekris v. M/V Aristoteles*, 318 F.Supp. 1327, 1328 (E.D.Va.1969), *aff'd*, 437 F.2d 219 (4th Cir. 1971), the court accepted jurisdiction over a seaman's claim for wages withheld to cover advances made in violation of section 599(a). Finally, in *Smith v. Western Offshore, Inc.*, 590 F.Supp. 670, 675 (E.D.La.1984), the court considered seamen's claims for wages paid prior to completion of voyage and found the payments not to be advance wages, hence, not violative of section 599(a). Thus, all three cases cited by Gary address seamen's claims for advance wages, pursuant to the portion of section 599(a) that is now codified as section 10314(a). None of them pertain to a seaman's claim for compensation, based on a third party's demand or receipt of remuneration for providing the seaman with employment, in violation of the portion of section 599(a) that is now codified as section 10314(b). Courts' recognition of a private right of action for advance wages, which is clearly articulated in section 10314(a), does not translate into recognition of a private right of action arising from section 10314(b)'s prohibition against the use of employment agencies for hiring seamen.

Further in this regard, the Court declines Gary's invitation to consider cases implying a private right of action for migrant workers under the Wagner–Peyser Act of 1933. As previously discussed, a court's task in deciding whether to imply a private right of action arising from violations of section 10314(b) consists of ascertaining congressional intent with regard to such statute. Cases interpreting migrant worker statutes, therefore, provide no indication of congressional intent with respect to this seamen's statute, even if, as argued by Gary, migrant workers are as "defenseless" as seamen. For the same reason, the Court declines Gary's invitation to analogize from cases interpreting statutes that relate to handicapped individuals and shareholders.

Having reviewed the statutory language and framework, the legislative history, and the case law, the Court finds no congressional intent to create a private cause of action for violations of section 10314(b). The Court, therefore, responds to the threshold issue of whether Gary may bring a claim for violation of section 10314(b) in the negative.[4]

### LEGAL SUFFICIENCY OF THE FOUR COUNTS IN THE AMENDED COMPLAINT

Having determined that Gary does not have a private cause of action for violations of section 10314(b), the Court concludes that dismissal with prejudice of Count I of the

---

4. Gary's claim for relief under section 10314(b) partakes of the artlessness found in the plaintiff seaman's claims in *Gilbert v. American Eagle Tanker Corp.*, 375 F.Supp. 678 (S.D.N.Y.1974), *aff'd*, 535 F.2d 1241 (2d Cir.1975). In *Gilbert*, the seaman asserted a number of claims, which relied on "various statutory provisions of the United States Code concerning civil and criminal penalties to be assessed against shipowner and masters for breaches of their statutory duties" and sought payment of these penalties to him as part of his damages. *Gilbert*, 375 F.Supp. at 679. Dismissing these claims, the court stated, "Clearly, such sanctions follow successful action by the government, and are not the basis for relief in favor of an individual seaman." *Id.* at 679–80. Like the plaintiff in *Gilbert*, Gary seeks relief, in the amount of his alleged payment rather than in the penalty amount, on the basis of a statutory provision designed to be enforced by the government. Like the *Gilbert* court, this Court finds no support in the statute for the relief sought.

amended complaint, which alleges violations of 46 U.S.C. § 10314, is appropriate. Moreover, in his response to the defendants' motions to dismiss, Gary concedes that, if he has no claim under § 10314, he may not assert a claim for civil conspiracy to violate the statute. (Plaintiff's Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss Amended Complaint, at 16). Therefore, dismissal with prejudice of Count II, which alleges conspiracy to violate 46 U.S.C. § 10314, is also appropriate. This leaves only the claims for common law conversion (Count IV) and unjust enrichment (Count V). Gary predicates both of these claims on the defendants' alleged violations of section 10314(b).

*Applicability of section 10314(b) to the claims for conversion and unjust enrichment:*

Preliminarily, the Court considers Stellar and Hallmark's argument that Gary has failed to allege sufficient facts to establish the applicability of section 10314 to these claims. Section 10314 applies to certain vessels of the United States and to foreign vessels when in waters of the United States.[5] The amended complaint avers that the Regent Rainbow, the vessel on which Gary allegedly obtained employment by paying a fee in violation of section 10314(b), is a "vessel" within the meaning of 46 U.S.C. § 10314. Gary, however, fails to provide the registry of the Regent Rainbow. He merely states that the Regent Rainbow sails out of Tampa, Florida. In his response to Stellar and Hallmark's argument, Gary refers to the portion of section 10314 pertaining to foreign vessels, implying that the Regent Rainbow falls within that category. This response does not cure Gary's failure to plead sufficient facts establishing the applicability of section 10314 to this action. Because Gary's response appears to indicate that Gary would be able to plead the required facts if granted leave to amend, the Court proceeds to address Gary's claims for common law conversion and unjust enrichment.[6]

*The Court's jurisdiction and applicable law*

■■■ In asserting these common law claims, Gary has invoked the Court's admiralty and maritime jurisdiction. For a tort claim to fall within a federal court's admiralty jurisdiction, "[t]he alleged wrong must occur or be located over a navigable waterway, and the wrong must bear a significant relationship to traditional maritime activity." *Mullenix v. United States,* 984 F.2d 101, 104 (4th Cir.1993) (citing *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972)). With respect to contracts, determination of whether a particular agreement falls within a federal court's admiralty jurisdiction "focuses on the nature of the contract, as to whether it has reference to maritime service or maritime transactions." *Nehring v. Steamship M/V Point Vail,* 901 F.2d 1044, 1048 (11th Cir.1990) (citations omitted). Admiralty jurisdiction extends to a quasi-contract claim for unjust enrichment, provided that such claim arises as a result of the breach of a maritime contract. *Archawski v. Hanioti,* 350 U.S. 532, 536, 76 S.Ct. 617, 621, 100 L.Ed. 676 (1956). With respect to agreements to procure a crew, the general rule is that such an agreement is not deemed maritime in nature. *Bergen Shipping Co. v. Japan Marine Servs., Ltd.,* 386 F.Supp. 430, 434 (S.D.N.Y.

---

**5.** Section 10301 addresses the scope of Chapter 103, under which section 10314 falls. Section 10301 states:

(a) Except as otherwise specifically provided, this chapter applies to a vessel of the United States—

(1) on a voyage between a port in the United States and a port in a foreign country (except a port in Canada, Mexico, or the West Indies); or

(2) of at least 75 gross tons on a voyage between a port of the United States on the Atlantic Ocean and a port of the United States on the Pacific Ocean.

(b) This chapter does not apply to a vessel on which the seamen are entitled by custom or agreement to share in the profit or result of a voyage.

(c) Unless otherwise provided, this chapter does not apply to a foreign vessel.

46 U.S.C.A. § 10301 (West Pamphlet 1994).

Section 10314 applies to "a foreign vessel when in waters of the United States." 46 U.S.C.A. § 10314(c) (West Pamphlet 1994).

**6.** The pleading defect is also evident in Counts I and II of the amended complaint. The Court's dismissal of these counts with prejudice, however, renders the issue moot with respect to them.

1974) (citations omitted). If the contract at issue extends beyond the mere furnishing of a crew, however, the claim may be cognizable in admiralty. *Id.* at 434–35.

Gary has predicated his tort and quasi-contract claims on the defendants' alleged violations of section 10314(b). It is not clear, however, that linking these claims to the statute, without more, satisfies the jurisdictional requirements outlined above. Because the parties did not address this issue in their briefs, the Court assumes, arguendo, that the claims are cognizable in admiralty. In that event, their legal sufficiency must be addressed within the context of federal maritime jurisprudence. *Garner v. Dravo Basic Materials Co.,* 768 F.Supp. 192, 193 (S.D.W.Va.1991). "Although admiralty law sometimes looks to state law for the rule of decision, it does so only when there is no admiralty rule on point and when doing so would not undermine uniformity." *Id.* The parties have not brought to the Court's attention, and the Court's research has failed to uncover, any admiralty rule on point or any uniformity considerations that would prohibit the application of Florida law to this action. Indeed, in their briefs, the parties have relied exclusively on Florida cases. Therefore, the Court proceeds to analyze the sufficiency of the conversion and unjust enrichment claims under the law of Florida.

*The claim for conversion*

"It is well settled that a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Senfeld v. Bank of Nova Scotia Trust Co.,* 450 So.2d 1157, 1160–61 (Fla. 3d DCA 1984). "Where a person having a right to possession of property makes demand for its return and the property is not relinquished, a conversion has occurred." *Id.* at 1161. "[T]he essence of conversion is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property, which intent may be, but is not always, shown by demand and refusal." *Id. See also Shelby Mut. Ins. Co. v. Crain Press, Inc.,* 481 So.2d 501, 503 (Fla. 2d DCA

1985), *review denied,* 491 So.2d 278 (Fla. 1986) ("[A] demand and refusal are unnecessary where it would be futile and the act preventing a return results in a depriving of possession and, thus, equates to a conversion.").

Where the property alleged to have been converted is money, it must be identifiable as a specific chattel. *Belford Trucking Co. v. Zagar,* 243 So.2d 646, 648 (Fla. 4th DCA 1970). Thus, money in a bank account or a money bag is capable of being converted. *See, e.g., Senfeld,* 450 So.2d at 1160 ($10,000 in bank account); *Allen v. Gordon,* 429 So.2d 369, 370–71 (Fla. 1st DCA 1983) (specified amounts in passbook and certificate of deposit accounts); *Armored Car Serv., Inc. v. First Nat'l Bank,* 114 So.2d 431, 433–34 (Fla. 3d DCA 1959) (bank deposits in locked canvas bags). A claim for conversion, however, may not be predicated on an indebtedness which may be discharged by the payment of money generally. *Belford Trucking,* 243 So.2d at 648. "A mere obligation to pay money may not be enforced by a conversion action." *Id.*

In support of his conversion claim, Gary alleges that, "Defendants committed an unauthorized and unlawful act when they required the Plaintiff to pay them $450 in violation of 46 U.S.C. § 10314." (Amended Seaman's Class Action Complaint, at ¶ 29). Assuming that Gary's conversion claim may be predicated on the defendants' alleged violation of section 10314(b), the claim is facially deficient on two grounds. First, Gary fails to allege that the defendants intended to deprive him of the $450, either by pleading demand and refusal, or by asserting the futility of such demand. Second, the money claimed to have been converted is not identified, or claimed to be identifiable, as a specific chattel. Even more fatal to Gary's conversion claim is the fact that, as more fully discussed below, the claim is rooted in contract. "[A]n action in tort is inappropriate where the basis of the suit is a contract, either express or implied." *Belford Trucking,* 243 So.2d at 648. Therefore, under Florida law, Gary may not assert a claim for conversion against the defendants. Accord-

ingly, the Court dismisses Count IV of the amended complaint with prejudice.

### The claim for unjust enrichment

"The elements of a claim for unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof." *Hercules, Inc. v. Pages,* 814 F.Supp. 79, 80 (M.D.Fla. 1993) (citing *Henry M. Butler, Inc. v. Trizec Properties, Inc.* 524 So.2d 710, 712 (Fla. 2d DCA 1988)). "[T]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *Bowleg v. Bowe,* 502 So.2d 71, 72 (Fla. 3d DCA 1987).

■■■■ As the basis for his unjust enrichment claim, Gary alleges that the defendants received a direct and tangible benefit when they unlawfully accepted and retained Gary's $450; and that it would be inequitable for the defendants to retain this money because they obtained it illegally in violation of 46 U.S.C. § 10314. These allegations pay lip service, but do not satisfy, the requisite elements for an unjust enrichment claim. The benefit which Gary claims to have conferred on the defendants is nothing more than Gary's performance of a promise to pay $450 in exchange for an employment letter. Assuming that such a transaction were rendered illegal by the application of section 10314(b), Gary may seek a contractual remedy, such as restitution. *See* 6A Arthur L. Corbin, *Corbin on Contracts* § 1535 (1962). Gary not only ignores the existence of this remedy; he also fails to allege that such remedy is inadequate. Therefore, Gary has failed to state a claim for unjust enrichment. *See Bowleg v. Bowe,* 502 So.2d at 72. Though not a certainty at this juncture, Gary may be able to cure this failure by amendment of the pleading. *See Archawski v. Hanioti,* 350 U.S. 532, 76 S.Ct. 617, 100 L.Ed. 676 (1956) (A claim for unjust enrichment was cognizable in admiralty where a vessel owner cancelled a voyage and subsequently refused to refund the money to the disappointed passengers,

where there was neither an actual promise to repay the passage, nor a second contract upon which the would be passengers could predicate their claims.). Therefore, in an abundance of caution, the Court dismisses Count V of the amended complaint without prejudice.

### CONCLUSION

In accordance with the parties' request, the Court has addressed, as a threshold issue, the availability of a private cause of action predicated on violations of 46 U.S.C. § 10314(b). The Court's negative answer to this question has disposed of Gary's claims for violation of, and for civil conspiracy to violate, section 10314(b). After examining Gary's claims for common law conversion and for unjust enrichment, which are predicated on violations of the statute, the Court has further determined that these claims are legally insufficient. In light of these rulings, the Court did not need to reach the following additional grounds raised by the defendants in their motions: (1) Agustini's motion to dismiss for insufficiency of service of process and for lack of personal jurisdiction; (2) Stellar and Hallmark's motion to dismiss the prayers for punitive damages and attorney's fees; (3) Stellar's motion to dismiss for insufficiency of process and/or insufficiency of service of process; and (4) all three defendants' challenge to the sufficiency of Gary's pleading as a class action complaint, within the meaning of *Fed.R.Civ.P.* 23. Should Gary file an amended pleading, as permitted by this order, the Court shall entertain, upon proper motion, the arguments that are still applicable to the amended pleading.

Therefore, based on the foregoing considerations, it is hereby

ORDERED AND ADJUDGED that:

(1) Agustini's motion to dismiss amended complaint is GRANTED IN PART.

(2) Stellar and Hallmark's motion to dismiss the amended complaint is GRANTED IN PART.

(3) Counts I, II, and IV of the amended complaint are DISMISSED with prejudice.

(4) Count V of the amended complaint is DISMISSED without prejudice.

(5) Gary has twenty days from the date of this order to file a second amended complaint. Failure to amend within the time allotted shall result in the dismissal of this action.

(6) Stellar and Hallmark's alternative motion for a more definite statement is DENIED as moot.

(7) Agustini's request for oral argument on its motion to dismiss is DENIED as moot.

(8) Gary's joinder in Agustini's request for oral argument is DENIED as moot.

DONE AND ORDERED.