Peter L. **FOWLER, Plaintiff,**

**v.**

**Robert C. TOWSE, individually; Yankee Girl, Inc.; and Blue Yankee, Inc., Defendants.**

No. 93–6786–CIV–NESBITT.

United States District Court, S.D. Florida.

Sept. 21, 1995.

William R. Scherer, Conrad, Scherer, James & Jenne, Fort Lauderdale, FL, for plaintiff.

Charles Christian Kline, Marcos Daniel Jimenez–D'Clouet, Eric S. Roth, White & Case, Miami, FL, for defendants.

## ORDER

NESBITT, District Judge.

This cause comes before the Court upon the following motions: Defendants' Motion to Dismiss for Failure to State a Claim or for Summary Judgment and for Sanctions, filed January 17, 1995 (D.E. # 43); Defendants' Motion for Partial Summary Judgment, filed January 23, 1995 (D.E. # 46); Defendants' Motion in Limine and for Partial Summary Judgment on the Grounds of the Statute of Limitations and Laches, filed January 23, 1995 (D.E. # 47–1 and # 47–2); and Plaintiff's Motion for Leave to File Third Amended Complaint, filed January 25, 1995 (D.E. # 50).

## I. FACTUAL BACKGROUND

In 1984, Defendant Robert C. Towse ("Towse"), in his capacity as president of Defendant Yankee Girl, Inc., hired Plaintiff Peter L. Fowler ("Fowler") to work as Master of the M/V Carina B ("the Carina B") and to operate the business of Yankee Girl, Inc. The Carina B was a charter vessel owned by Yankee Girl, Inc., a New Hampshire corporation. Towse is the sole shareholder of Yankee Girl, Inc.

Fowler worked aboard the Carina B until April of 1990, and provided Towse with regular financial reports summarizing the operation of the Carina B and Yankee Girl, Inc. For his work, Fowler was due a salary of $25,000 per year.

Several times between 1984 and April of 1990, Fowler also performed work, at Towse's direction, on the sailing vessel S/V Blue Yankee ("the Blue Yankee"). Defendant Blue Yankee, Inc., also a New Hampshire corporation, owned and operated the Blue Yankee. Towse is the sole shareholder of Blue Yankee, Inc.

Throughout the course of his employment with Yankee Girl, Inc., Fowler alleges that he advanced monies for repair services and materials necessary to maintain the Carina B and Blue Yankee in proper condition. Fowler claims that Towse approved these advances, but Towse denies the existence of any such agreement.

By letter dated February 26, 1990, Fowler requested from Towse reimbursement for a "shortfall in petty cash" equivalent to over two thousand dollars per month for five years. Shortly after February 26, 1990, Towse told Fowler that the matter would be "taken care of."

In April of 1990, Fowler was discharged from his employment aboard the Carina B. Fowler alleges that on his discharge he was not paid wages owed to him or repaid for the advances he made to the Carina B and the Blue Yankee. The Carina B was sold in April of 1990, shortly after Fowler's discharge. The record does not establish the current owner of the Blue Yankee.

Fowler's original complaint, filed September 17, 1993, was dismissed for failure to allege subject matter jurisdiction. On October 12, 1993, Fowler filed his motion for leave to file an amended complaint, which the Court also denied for failure to allege subject matter jurisdiction. On November 18, 1993, Fowler filed his Second Amended Complaint.

Count I is a breach of contract and unjust enrichment claim against all Defendants for unpaid wages and repayment of advances arising out of Fowler's employment aboard the Carina B. Count II is a breach of contract and unjust enrichment claim against all Defendants for unpaid wages and repayment of advances arising out of Fowler's employment aboard the Blue Yankee. Count III is a fraud claim against Towse, alleging that Towse fraudulently represented to Fowler that if Fowler refrained from instituting attachment proceedings on the Carina B, Towse would pay Fowler's wages and repay him for the advances. As a result of the alleged misrepresentation, Fowler claims that he was damaged by waiving his entitlement to enforce a maritime lien against the Carina B before it was sold. Count IV is an admiralty claim for payment of seaman's wages, and is based upon 46 U.S.C. § 10318.

## II. SUMMARY JUDGMENT STANDARD

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The movant bears the initial responsibility of informing the Court of the basis for its motion and of identifying those materials which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In response to a properly supported motion for summary judgment, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts which show a genuine issue for trial." FED.R.CIV.P. 56(e). If the non-moving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the Court must enter summary judgment for the moving party. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The Court is not to resolve factual issues, but may only determine whether factual issues exist. A material fact is one which "might affect the outcome of the suit under the governing law...." *Id.* at 248, 106 S.Ct. at 2510. The inquiry, then, is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

## III. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The Defendants make three arguments in support of their Motion for Partial Summary

Judgment as to Counts I, II, and IV, filed January 23, 1995 (D.E. # 46): one, all wages due to Fowler were paid and no dispute exists as to that fact; two, Count IV of the Second Amended Complaint ("Admiralty and Maritime Claim for Wages") alleges a violation of 46 U.S.C. § 10318 (1995), a statute which is inapplicable to the vessels which are the subject of Count IV; and three, Fowler's claims for wages fail to state *in personam* claims against the Defendants.

## A. Payment of Wages

The Defendants argue that no dispute exists as to whether Fowler was paid all of his wages. In support of the Defendants' motion, Towse submitted a declaration in which he stated that Fowler was paid all of his wages. Additionally, the Defendants submitted a list of the numbers and amounts of all checks paid towards Fowler's wages, and directed the Court to Fowler's deposition, in which Fowler testified that he received checks, which he understood to be paychecks, at least equal to his wages for all periods of time in suit.

Fowler argues that summary judgment is inappropriate because it is impossible to determine whether the monies owed to him by the Defendants are for unpaid wages or repayment of advances. Fowler claims that immediately upon receiving his wages, he was forced to advance those funds to the Carina B and the Blue Yankee to operate and maintain those vessels in seaworthy condition. In support of his argument, Fowler submitted an affidavit and directed the court to a line from his deposition in which he stated that he did not know if he was owed any wages for 1984 because he was unsure whether the monies he was owed would be interpreted as wages.

In Fowler's deposition, he did at one point state that he was unsure whether the monies he was owed would be interpreted as wages (page 35, lines 4–11). However, later in the deposition (pages 35–36) Fowler stated that he received "paychecks" equivalent to his "payments in full" for 1984. Additionally, Fowler said that he received paychecks in amounts equivalent to all wages due him for 1985 through 1990 (pages 86–87). Fowler's

affidavit also demonstrates that even Fowler believes that he was paid all of his wages.

■ Fowler's allegations that he subsequently advanced some of those wages back to the vessels, while providing the basis for a cause of action for repayment of those advances, do not create a genuine issue as to whether his wages were paid. Fowler's deposition testimony and affidavit demonstrate that he was paid his wages in full for his work aboard the Carina B and the Blue Yankee. Therefore, summary judgment is appropriate as to Fowler's wage claims in Counts I, II, and IV.

## B. Applicability of 46 U.S.C. § 10318 to Count IV

Two additional reasons exist to grant summary judgment as to Count IV of Fowler's Second Amended Complaint. Count IV alleges a violation of 46 U.S.C. § 10318 for the Defendants' failure to pay Fowler seaman's wages for work he performed aboard the Carina B and the Blue Yankee. 46 U.S.C. § 10318 provides, in part:

§ 10318. Wages on discharge in foreign ports

(a) When a master or seaman applies to a consular officer for the discharge of the seaman, the consular officer shall require the master to pay the seaman's wages if it appears that the seaman has carried out the agreement required by section 10302 of this title or otherwise is entitled to be discharged. Then the consular officer shall discharge the seaman. . . .

The Defendants argue that Fowler cannot maintain a claim under 46 U.S.C. § 10318 because § 10318 applies only to vessels that meet the requirements of 46 U.S.C. § 10301 (1995), and Fowler has neither alleged nor presented evidence that either the Carina B or the Blue Yankee satisfied the requirements of 46 U.S.C. § 10301. In his response, Fowler did not address the Defendant's arguments regarding Count IV.

46 U.S.C. § 10301 restricts the application of § 10318 to seamen aboard certain vessels. 46 U.S.C. § 10301 provides, in part:

46 U.S.C. § 10301. Application (a) Except as otherwise specifically provided, this

chapter [§§ 10301–10321] applies to a vessel of the United States—

> (1) on a voyage between a port in the United States and a port in a foreign country (except a port in Canada, Mexico, or the West Indies); or

> (2) of at least 75 gross tons on a voyage between a port of the United States on the Atlantic Ocean and a port of the United States on the Pacific Ocean.

In his affidavit in support of the Defendants' motion (D.E. # 48), Towse stated that all of the Carina B's voyages began and ended in the United States. In response, Fowler neither alleged nor presented evidence which raises a genuine issue as to whether the Carina B or the Blue Yankee satisfied the requirements of 46 U.S.C. § 10301.

Additionally, § 10318(a) applies only to seamen who have "carried out the agreement required by section 10302 of this title or otherwise [are] entitled to be discharged." 46 U.S.C. § 10318(a). 46 U.S.C. § 10302(a) provides that "[t]he owner, charterer, managing operator, master or individual in charge shall make a shipping agreement in writing with each seaman before the seaman commences employment." Fowler has neither alleged nor presented evidence demonstrating that he entered into a shipping agreement, required by 46 U.S.C. § 10302(a), with any of the Defendants, or that he was otherwise entitled to be discharged.

■ Because no genuine dispute exists as to whether Fowler was paid all of his wages and because 46 U.S.C. § 10318 is inapplicable to Fowler and the vessels upon which he worked, the Defendants' Motion for Partial Summary Judgment (D.E. # 46) is GRANTED. Therefore, Count IV of the Second Amended Complaint is dismissed, and Counts I and II are dismissed to the extent they request payment of wages, but not to the extent that they request repayment of advances.

## IV. DEFENDANTS' MOTION IN LIMINE AND FOR PARTIAL SUMMARY JUDGMENT ON THE GROUNDS OF THE STATUTE OF LIMITATIONS AND LACHES

The Defendants request that the Court grant their Motion in Limine and for Partial Summary Judgment (D.E. # 47–1 and # 47–2) on the grounds that Florida's statute of limitations and laches bar Fowler's claims for repayment of advanced monies which accrued prior to September 17, 1989. The Defendants claim that Fowler believed that any cause of action regarding monies advanced by Fowler accrued at the moment Fowler advanced those funds. The Defendants argue that if Fowler is correct, then all claims for monies advanced prior to September 17, 1989 are barred by the statute of limitations because a four year statute of limitations applies and the original complaint was filed on September 17, 1993.

■ Fowler's claims for repayment of advanced monies, contained in Counts I and II of the Second Amended Complaint, are not founded upon a written agreement. Therefore, these claims are governed by a four year limitations period. FLA.STAT. ch. 95.11(3)(k) (1995).[1]

■ In order to prevail on a motion for summary judgment based upon the statute of limitations, the Defendants must "conclusively show that there exists no disputed issue of fact with respect to the date[s] of commencement of the limitations period[s]," *Board of Trustees of Santa Fe Community College v. Caudill Rowlett Scott, Inc.*, 461 So.2d 239, 242–43 (Fla. 1st DCA 1984), *reh'g denied*, 472 So.2d 1180, 1182 (Fla.1985). The limitations period "runs from the time the cause of action accrues," FLA.STAT. ch. 95.031 (1995), and "[a] cause of action accrues when the last element constituting the cause of action occurs." FLA.STAT. ch. 95.031(1) (1995)

■ Therefore, to determine when Fowler's causes of action accrued, the Court must determine whether Fowler's causes of action are based on breach of contract or unjust

---

**1.** Section 95.11(3)(k) applies to a "legal or equitable action on a contract, obligation, or liability

not founded on a written instrument, . . . ."

enrichment, and then determine when the last element constituting each cause of action occurred. The Defendants allege and have presented evidence (i.e., Towse's declaration) that no contract existed regarding Fowler's alleged advances. In response, Fowler presented no evidence demonstrating that such a contract existed between Fowler and the Defendants. Thus, Fowler's causes of action for repayment of monies advanced are based upon unjust enrichment, not breach of contract.

"The elements of a claim for unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention of such benefit by the defendant under such circumstances as it would be inequitable for him to retain it without paying the value thereof." *Gary v. D. Agustini & Asociados, S.A.*, 865 F.Supp. 818, 826 (S.D.Fla.1994) (citations omitted). To satisfy the second and third elements above, a defendant must have "request[ed] the other party to perform the services or knowingly and voluntarily accept[ed] their benefits." *Coffee Pot Plaza Partnership v. Arrow Air Conditioning and Refrigeration, Inc.*, 412 So.2d 883, 884 (Fla. 2d DCA 1982). Therefore, a cause of action for unjust enrichment does not accrue until the defendant knowingly and voluntarily accepts the benefits bestowed upon him. *See* Fla.Stat. ch. 95.031(1) (1995).

Fowler alleges that Towse knew of and voluntarily accepted the benefit of monies advanced by Fowler either when Towse received Fowler's regular financial statements, or when Towse, after receiving Fowler's February 26, 1990 letter demanding payment for his wages and the advances, told Fowler that the problem would be "taken care of." The Defendants claim that Towse was not aware of the alleged advances until he received Fowler's letter, and that he never authorized or voluntarily accepted the benefit of the advances.

Thus, a dispute exists not only as to whether the Defendants voluntarily accepted the benefits Fowler allegedly conferred upon them, but also as to *when* the Defendants knew about (and perhaps voluntarily accept-

ed) the benefits. If the Defendants knowingly and voluntarily accepted the benefits of the advances in February of 1990, then Fowler's causes of action did not accrue until that time because at that time all elements of an unjust enrichment cause of action would have occurred. If Fowler's causes of action did not accrue until February of 1990, then none of Fowler's claims for repayment of advances would be time barred because he filed suit on September 17, 1993, within four years of the accrual date.

Summary judgment is not warranted with respect to Plaintiff's claims for repayment of monies advanced, and the Defendants' Motion in Limine (D.E. # 47–1) and for Partial Summary Judgment (D.E. # 47–2) on the Grounds of the Statute of Limitations and Laches is DENIED.

## V. DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR FOR SUMMARY JUDGMENT AND FOR SANCTIONS

### A. Summary Judgment

The Defendants argue that summary judgment is appropriate as to Count III, Fowler's fraud claim against Towse, because Fowler did not allege that he suffered damage as a result of the alleged fraud. Fowler alleges that he sustained damage by waiving his entitlement to institute attachment proceedings, based upon a maritime lien, against the Carina B prior to its sale. The Defendants claim that maritime liens are not extinguished upon sale of the subject vessel, and therefore the sale of the Carina B did not extinguish Fowler's right to enforce his lien against the Carina B.

The elements of actionable fraud are: (1) a false statement concerning a material fact, (2) knowledge by the person making the statement that the representation is false, (3) the intent by the person making the statement that the representation will induce another to act on it, and (4) injury sustained by a person acting in justifiable reliance on the fraudulent statement. *See, e.g., Royal Typewriter Company, Division of Litton Business Systems, Inc. v. Xerographic Sup-*

*plies Corp.,* 719 F.2d 1092 (11th Cir.1983); *Lance v. Wade,* 457 So.2d 1008 (Fla.1984).

A maritime lien is not extinguished when the vessel to which it attaches is sold to a good faith purchaser for value. *Equilease Corp. v. M/V Sampson,* 793 F.2d 598, 602 (5th Cir.1986); *The Joseph Warner,* 32 F.Supp. 532 (D.Mass.1939). After the vessel's sale, the holder of the lien has the right to appropriate the vessel, have it resold, and be repaid the debt from the proceeds. *Itel Containers Int'l Corp. v. Atlanttrafik Express Service Ltd.,* 982 F.2d 765, 768 (2d Cir.1992); *The Poznan,* 9 F.2d 838 (2d Cir.1925), *rev'd on other grounds sub nom. New York Dock Co. v. The Poznan,* 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955 (1927).

Therefore, Towse's alleged misrepresentations did not preclude Fowler from enforcing a maritime lien against the Carina B after its sale. Fowler suffered no legal damage by waiving his right to enforce his lien *before* the Carina B was sold, because he retained the right to enforce his lien after the sale. If he had enforced his lien after the Carina B was sold, Fowler would have been entitled to have the vessel resold, and would have been entitled to repayment of all of his damages from the proceeds of that sale.

Fowler has raised no genuine issue as to whether he suffered legal damage as a result of Towse's alleged misrepresentations. Because damage must be alleged in order to state a cause of action for fraud, summary judgment is appropriate as to Count III.

## B. Rule 11 Sanctions

The Defendants argue that Rule 11 sanctions should be assessed against Fowler because there exists no factual or legal basis for Fowler's fraud claim, and because Fowler included Count III in his complaint for an improper purpose. Fowler's complaint alleges that he suffered damages by waiving his right to enforce his lien against the Carina B "prior to its sale." (D.E. # 11, paragraph 34). This argument constitutes "a nonfrivolous argument for the extension [or] modification ... of existing law or the establishment of new law." FED.R.CIV.P. 11(b)(2).

Therefore, Rule 11 sanctions against Fowler are not warranted.

Because Fowler has failed to allege that he suffered damages requisite to stating a fraud claim and because Rule 11 sanctions are not warranted, the Defendant's Motion to Dismiss for Failure to State a Claim or for Summary Judgment and For Sanctions is **GRANTED** in part and **DENIED** in part. Further, Count III of the Second Amended Complaint is dismissed.

## VI. FOWLER'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT.

In his Motion for Leave to File Third Amended Complaint, filed January 25, 1995 (D.E. # 50), Fowler seeks to amend his complaint for the third time by adding a fifth count entitled, "Piercing Corporate Veil/Alter Ego."

Discovery was completed on January 6, 1995, nineteen days before Fowler filed this motion. Fowler alleges that he failed to file his motion until after discovery was completed because he was not aware of facts supporting the amendments until he took Towse's deposition on January 5, 1995, only one day before discovery was completed.

Leave to amend a complaint should not be granted if there exists "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc...." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Fowler has already amended his complaint twice. Additionally, Fowler filed his motion for leave to amend after discovery was completed, and only forty days before the then scheduled trial date (February 27, 1995).

Fowler's delay in deposing the Defendant Towse until one day before discovery was completed does not justify his late filing of this motion to amend. Based upon Fowler's undue delay, repeated failure to cure deficiencies by amendments previous-

ly allowed, and the undue prejudice to the Defendants which would result from allowance of the late amendment, Fowler's Motion for Leave to File Third Amended Complaint is **DENIED.** Accordingly, it is hereby

**ORDERED** that:

1. The Defendants' Motion to Dismiss for Failure to State a Claim or for Summary Judgment and For Sanctions, filed January 17, 1995 (D.E. # 43), is **GRANTED** in part and **DENIED** in part. Therefore, Count III of the Second Amended Complaint is dismissed.

2. The Defendants' Motion for Partial Summary Judgment, filed January 23, 1995 (D.E. # 46), is **GRANTED.** Therefore, Count IV of the Second Amended Complaint is dismissed, and Counts I and II are dismissed to the extent that those counts seek payment of wages.

3. The Defendants' Motion in Limine and for Partial Summary Judgment on the Grounds of the Statute of Limitations and Laches, filed January 23, 1995 (D.E. # 47–1 and D.E. # 47–2), is **DENIED.**

4. The Plaintiff's Motion for Leave to File Third Amended Complaint, filed January 25, 1995 (D.E. # 50) is **DENIED.**

5. The parties shall proceed to trial on Counts I and II of the Second Amended Complaint, but only to the extent that those counts seek repayment of monies allegedly advanced by Fowler.

DONE and ORDERED.